UNITED STATES of America

v.

Dale H. DICKERSON, et al.

Civ. No. Y–85–3249.

United States District Court,
D. Maryland.

May 28, 1986.

F. Henry Habicht, II, Patricia Kablach Casana, Washington, D.C., Breckinridge L. Willcox, U.S. Atty., State of Md., and Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

**450**

Alan Hilliard Legum, Annapolis, Md., for defendants Dale H. Dickerson, Dale M. Dickerson, and Isiah Pearmon.

Deborah E. Jennings, Baltimore, Md., for defendant Jotun Marine Coatings, Inc.

Charles F. Lettow, Katherine L. Rhyne, Washington, D.C., and Joseph S. Kaufman, Baltimore, Md., for defendant SCM Corp.

JOSEPH H. YOUNG, District Judge.

The United States brought this civil action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*, to recover response costs it incurred in cleaning up a landfill known as the "Middletown Road Site" in Anne Arundel County, Maryland, four miles northwest of Annapolis. The government sued Dale H. and Dale M. Dickerson, allegedly co-owners of the site who allowed the dumping of industrial waste there for a fee between 1975 and 1983; Jotun Marine Coatings, Inc. ("Jotun"), the corporate successor of the Jotun Baltimore Copper Paint Company that allegedly contracted for the disposal of its wastes at the site; SCM Corporation, which allegedly owned 50 percent of Jotun Marine's stock and operated Jotun's Baltimore plant from 1977–1979; and Isiash Pearmon, d/b/a Pearmon's Trash Removal, who allegedly contracted for disposal of the wastes from Jotun's Baltimore plant and deposited them at the Dickersons' landfill. The complaint alleges that the Environmental Protection Agency ("EPA"), discovered concentrations of heavy metals and organic chemicals at the landfill in 1982–1983 that threatened a nearby residential area and a tributary of the Chesapeake Bay. The EPA allegedly spent approximately $561,000 removing the hazardous materials and capping the site with clay.

Jotun, Pearmon, and the Dickersons have filed answers to the complaint, asserting 17 identical affirmative defenses in identical order. The government has moved to strike defenses two through five and nine through seventeen.

The second defense asserts that the United States has "failed to join all the parties indispensable to the just adjudication of this lawsuit...." It is true that any other persons or businesses that dumped hazardous materials on the site may be liable to the government under CERCLA. But CERCLA provides for joint and several liability unless the defendants carry the burden of establishing a basis for apportionment under principles of federal common law. *See, e.g., United States v. Stringfellow*, 14 ELR 20385, 20386–87 (D.C.Cal. April 5, 1984); *State of Colorado v. Asarco*, 608 F.Supp. 1484, 1486–1492, and cases cited at 1491–92 (D.Colorado 1985); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 n. 13 (2d Cir. 1985). The courts have consistently rejected attempts by CERCLA defendants to compel the government to round up every other available defendant, noting that defendants can protect themselves through the impleader provision of Rule 14. *See, e.g., United States v. A & F Materials Co., Inc.*, 578 F.Supp. 1249, 1260–61 (S.D.Ill. 1984) ("it is well settled that a plaintiff may choose between joint tortfeasors when bringing an action"); *United States v. Conservation Chemical Co.*, 589 F.Supp. 59, 63 (W.D.Mo.1984); *United States v. Northeastern Pharmaceutical & Chemical Co.*, 579 F.Supp. 823, 845 n. 26 (W.D. Mo.1984). The government's motion to strike the defendants' second affirmative defense will be granted.

Defendants' third defense asserts that the government's claims "are barred in whole or in part by applicable statutes of limitations." 42 U.S.C. § 9612(d) contains a three-year statute of limitations for "claims" and "actions for damages" under CERCLA. After an exhaustive analysis of the language of the statute and its legislative history, Chief Judge Devine of the District of New Hampshire concluded that § 9612(d) applied only to "claims" against the Superfund and "actions for damages to natural resources" under § 9607(a)(4)(C), as those terms are used consistently throughout the statute. Judge Devine also con-

cluded that because a CERCLA suit for reimbursement of response costs was equitable in nature, no analogous legal limitations period applied, and the doctrine of laches was the only applicable limitation on CERCLA reimbursement suits. *United States v. Mottolo*, 605 F.Supp. 898, 901–09 (D.N.H.1985). The Court finds Judge Devine's analysis convincing, and adopts it entirely. *See also United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 213 (W.D.Mo.1985). Accordingly, the government's motion to strike the defendants' third affirmative defense will be granted.

■ Defendants' fourth affirmative defense asserts that the government's claims "are barred by laches." However, when the United States brings suit in its sovereign capacity, the doctrine of laches may not bar the suit. *See United States v. Mottolo, supra,* and cases cited at 605 F.Supp. 909; *but see United States v. Conservation Chemical Co., supra,* 619 F.Supp. at 213, and *United States v. Reilly Tar & Chemical Corp.*, No. 4–80–469 (D.Minn. June 14, 1984), slip op. at 5 (acknowledging weight of precedent against applying laches to government suits, but refusing to strike laches defense in a factual vacuum). Accordingly, the government's motion to strike the defendants' fourth affirmative defense will be granted.

■ The defendants' fifth affirmative defense asserts that the government's claims "are barred under the doctrine of estoppel." The government argues that it may not be estopped from acting to protect the public interest. In *Furcron v. United States*, 626 F.Supp. 320 (D.Md.1986), the Court acknowledged that estoppel is available against the United States in very limited circumstances, if at all, but followed the Supreme Court in refusing to adopt "a flat rule that estoppel may not in any circumstances run against the government." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). The Court declines the invitation to adopt a flat rule here. The government's motion to strike the defendants' fifth affirmative defense will be denied.

■ The defendants' ninth defense asserts that "at all relevant times, [the defendants] acted in a proper and reasonable manner, exercised due care, complied with all laws and regulations concerning waste disposition, and otherwise conducted [their] operations reasonably and lawfully." This defense has no application to this suit, because CERCLA imposes strict liability for the classes of defendants listed in § 9607(a)(1), (4), subject only to the very limited defenses enumerated in § 9607(b). *See, e.g., J.V. Peters & Co., Inc. v. Administrator, Environmental Protection Agency*, 767 F.2d 263, 266 (6th Cir.1985); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir.1985); *United States v. Maryland Bank & Trust Co.*, 632 F.Supp. 573, 576 (D.Md.1986) (Judge Northrop). Accordingly, the government's motion to strike the defendants' ninth defense will be granted.

■ The tenth and eleventh defenses assert that at the time of the activities complained of, the defendants could not reasonably have been aware that their activities were unlawful under CERCLA, or that the materials they disposed of were hazardous substances within the meaning of CERCLA. To the extent that these defenses plead a defense of due care, they must be stricken for the reasons stated immediately above.

■ The government construes these defenses to plead a defense of unconstitutional retroactivity. The defendants' seventeenth defense asserts that a retroactive application of CERCLA would violate due process and impair the right to contract. The courts have consistently ruled that CERCLA's language and legislative history overrule the presumption against retroactive application of statutes, and have rejected similar constitutional attacks upon the Act. *See, e.g., United States v. Ottati & Goss, Inc.*, 630 F.Supp. 1361 (D.N.H.1985); *United States v. Argent Corp.*, 14 ELR 20497 (D.N.H. May 4, 1984) [Available on

WESTLAW, DCTU database]; *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 213–14 (W.D.Mo.1985); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1072–73 (D.Colo.1985); *United States v. South Carolina Recycling and Disposal, Inc.*, 14 ELR 20272, 20276 (D.S.C. Feb. 23, 1984); *United States v. Northeastern Pharmaceutical & Chemical Co.*, 579 F.Supp. 823, 840–41 (W.D.Mo.1984); *but see United States v. Stringfellow*, 14 ELR 20388 (D.C. Cal. April 4, 1986) (reserving judgment on retroactivity as applied to defendants). Accordingly, the government's motion to strike defense seventeen will be granted. The government's motion will be granted as to defenses ten and eleven insofar as those defenses plead due care or constitutional defects, but the Court's ruling does not eliminate the possibility that the defendants' knowledge may be relevant to an estoppel defense, or to equitable actions for apportionment.

■ The twelfth and fifteenth defenses are variations on the theme that the government failed to give the defendants notice before instituting this suit. Section 9612(a) of CERCLA provides:

All claims which may be asserted against the fund pursuant to Section 9611 of this title shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under § 9607. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor or other . person or to present a claim to the fund for payment.

At least two district courts have held that the procedural requirements of § 9612(a) apply to government suits brought under § 9607. *See State of Idaho v. Howmet Turbine Component Corp.*, 627 F.Supp. 1274 (D. Idaho 1986); *United States v. Allied Chemical Co.*, 587 F.Supp.

1205 (N.D.Cal.1984). Such a reading of the word "claim" is inconsistent with Judge Devine's careful analysis of the statute in *Mottolo*, *supra*, and is inconsistent with the use of the word "claim" elsewhere in the statute. It is also inconsistent with considerable judicial precedent recognizing that Section 9607 is independant of Sections 9611 and 9612. *See Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283 (N.D.Cal.1984), and cases cited at 288. Other courts have held that § 9612(a) does not apply to suits for reimbursement of response costs brought by the government, and that the sixty-day notice requirement is not jurisdictional in any event. The Court finds that reasoning persuasive. *See State of Colorado v. Asarco, Inc.*, 616 F.Supp. 822, 824–28 (D.Colo.1985); *State of New York v. General Electric Co.*, 592 F.Supp. 291, 299–300 (N.D.N.Y. 1984). Accordingly, the government's motion to strike defenses twelve and fifteen will be granted.

■ Defenses thirteen and fourteen assert that the United States failed to give notice to the defendants or to determine whether the defendants would voluntarily take response measures at the site before going ahead with its cleanup action. The defendants have been unable to point the Court toward any caselaw which imposes such . a duty of consultation upon the government. The defendants seek support for their defenses in § 9604(a)(1) of the Act, which provides:

Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any con-

taminated natural resource), or take any other response consistent with the national contingency plan which the President deems necessary to protect the public health or welfare of the environment, unless the President determines that such removal and remedial action will be done properly by the owner or operator of the vessel or facility from which the release or threat of release emanates, or by any other responsible party.

There is nothing in the plain language of the statute imposing a mandatory duty upon the government to consult with private parties before undertaking response actions. In fact, the plain language of the statute contemplates emergency situations where the kind of notice and consultation advocated by defendants will be impossible. The courts should hesitate before reading procedural roadblocks into the statute when the health of the environment may be at stake. " 'Statutes which are enacted for the protection and preservation of public health' are to be given 'an extremely liberal construction for the accomplishment and maximization of their beneficial objectives.' " *United States v. Conservation Chemical Co., supra,* 619 F.Supp. at 192; *quoting* 3 Sutherland, *Statutes and Statutory Construction,* § 71.02 at 313. If the government responds too hastily, defendants may properly assert a defense in a subsequent CERCLA suit that the government expended funds in a manner inconsistent with the national contingency plan. Accordingly, the government's motion to strike defenses thirteen and fourteen will be granted.

■ The sixteenth defense asserts that the government incurred costs inconsistent with the national contingency plan and therefore may not recover *any* of its response costs. Under the plain language of the statute, the government may recover "all costs of removal and remedial action ... not inconsistent with the national contingency plan." "The defendants are presumed liable for all response costs incurred *unless* they can overcome this presumption by presenting evidence of inconsistency."

*United States v. Northeastern Pharmaceutical, supra,* 579 F.Supp. at 850. The government may recover all costs consistent with the plan; it may not recover any inconsistent costs. The government's motion to strike will be granted to limit the construction of this defense to its proper scope.

■ Jotun also timely filed a demand for a jury trial. The government moved to strike the jury trial demand on the grounds that a CERCLA response cost reimbursement suit is equitable in nature. The courts have uniformly agreed that there is no right to a jury trial in CERCLA § 9607 suits. *See United States v. Mottolo, supra,* and cases cited at 605 F.Supp. 913. Defendants did not file an opposition to the government's motion, and the Court is not aware of any precedent holding that the Seventh Amendment applies to the statute. Accordingly, the government's motion to strike Jotun's demand for a jury trial will be granted.