**UNITED STATES of America, Plaintiff,**

v.

**MARISOL, INC., et al., Defendants.**

**Civ. No. 88–1640.**

United States District Court,
M.D. Pennsylvania.

Oct. 31, 1989.

Robert J. DeSousa, U.S. Atty's Office, Scranton, Pa., Donald A. Carr, Land & Natural Resources Div., U.S. Dept. of Justice, Rene Webb, Office of Enforcement & Compliance Monitoring–Waste, U.S. E.P.A., S. Arnold Rosenthal, Environmental Enforcement Section, U.S. Dept. of Justice, Washington, D.C., Andrew S. Goldman, U.S. E.P.A., Region III, Asst. Regional Counsel, Philadelphia, Pa., for U.S.

Bernard A. Ryan, Jr., Dechert, Price & Rhoads, Harrisburg, Pa., Michael A. Bogdonoff, Philadelphia, Pa., for defendants.

Nicholas M. Kouletsis, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for American Cyanamid Co.

Timothy J. Holland, Wilkes–Barre, Pa., Allan J. Topol, Covington & Burling, Washington, D.C., for Inland Container Corp. and Smithkline Beckman Corp.

William A. Lavelle, III, Scranton, Pa., pro se.

Jacob I. Nogi, Scranton, Pa., Bernard A. Ryan, Jr., Richard A. Levao, Shanley & Fisher, Morristown, N.J., for Marisol, Inc.

## MEMORANDUM

NEALON, District Judge.

Currently before the court is the motion of the United States of America (the Government) seeking to strike certain affirmative defenses set forth in the answers of defendants Marisol, Inc. (Marisol), Inland Container Corporation (Inland), American Cyanamid Company (American Cyanamid), and Smithkline Beckman Corporation (Smithkline). For the reasons that follow, the court will grant the Government's motion in part and deny it in part.

### I. *Background*

The Government commenced this action pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), *see* 42 U.S.C. § 9607(a), on September 30, 1988. *See* document 1 of record. The complaint alleges that each of the defendants was, at the time of the events that form that basis of this action, a generator or transporter of hazardous substances found at the Keyser Avenue Borehole Site (the Site) in Scranton, Pennsylvania, and that the Government incurred certain response costs in connection with the release or threatened release of these substances. *See* document 1 of record. Specifically, the government seeks recovery of $533,654.53 in removal costs and a declaratory judgment that the defendants are jointly and severally liable for any future response costs which may be incurred by the Government at the Site. *See id.*

Between January 26, 1989 and February 6, 1989, defendants Marisol, Smithkline, Inland, and American Cyanamid filed answers to the complaint in which each raised various affirmative defenses. *See* documents 10, 11, 12, and 14 of record. On March 21, 1989, the Government filed the instant motion seeking to strike certain affirmative defenses from each defendant's answer. *See* document 31 of record. The Government filed a brief in support of its motion on June 5, 1989. *See* document 40 of record.

Inland and Smithkline filed a brief in opposition to the Government's motion on

June 23, 1989. *See* document 45 of record. Subsequently, defendants American Cyanamid and Marisol submitted their opposition briefs. *See* documents 50 and 52 of record.

The Government filed a reply brief on August 10, 1989. *See* document 53 of record. Because all the supporting and opposing documents concerning the instant motion have been filed, the matter is now ripe for consideration by this court.

## II. *Discussion*

### A. Standards Governing Motions to Strike

The instant motion to strike is brought pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, which provides, in part:

> (f) Motion to Strike. Upon motion made by a party ... the court may order stricken from the pleading any insufficient defense ...

Fed.R.Civ.P. 12(f). Motions to strike are generally viewed with disfavor, *see American Standard Life & Accident Insurance Co. v. U.R.L., Inc.*, 701 F.Supp. 527, 531 (M.D.Pa.1988) (Caldwell, J.), and should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law. *United States v. 187.40 Acres of Land*, 381 F.Supp. 54, 56 (M.D.Pa.1974) (Nealon J.).

Nevertheless, a motion to strike under Rule 12(f) is the "primary procedure" for objecting to an insufficient affirmative defense. 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1380 at 782 (1969). Thus, even though motions to strike are often viewed with disfavor because of their potential to be used as a dilatory tactic, they do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case. *United States v. Geppert Bros., Inc.*, 638 F.Supp. 996, 998 (E.D.Pa.1986). (citing *Narragansett Tribe v. Southern*

*Rhode Island Land Development Corp.*, 418 F.Supp. 798, 801 (D.R.I.1976)).

In the instant motion, the Government challenges the sufficiency of certain affirmative defenses raised by the defendants in their respective answers. Applying the standards outlined above, the court will examine each of these challenges seriatim.

### 1. Failure to State a Claim

Each answering defendant contends that the Government's complaint fails to state a claim upon which relief can be granted.[1] In seeking to have these defenses stricken, the Government argues that a claim upon which relief can be granted is stated by the complaint. *See* documents 40 and 53 of record.

Initially, the court notes that neither Inland, Smithkline, nor American Cyanamid has responded to the Government's contention that the court should strike their defenses alleging that the complaint fails to state a claim upon which relief can be granted. Only defendant Marisol responded to the Government's contention, arguing that the defense of failure to state a claim should not be stricken before Marisol is given sufficient opportunity to discover facts which will support such a defense. *See* document 52 of record at 11–13.

As the Government correctly points out, however, the defense of failure to state a claim upon which relief can be granted challenges only the formal sufficiency of the claims set forth in the complaint. *See* 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1356 at 590 (1969). The function of a motion to dismiss for failure to state a claim upon which relief can be granted is to test the law of the claim and not the facts which support it. *Spell v. McDaniel*, 591 F.Supp. 1090, 1099, n. 1 (E.D.N.C.1984). Moreover, a court should not dismiss a complaint for failure to state a claim unless it affirmatively appears that plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gib-*

---

**1.** Marisol's second defense; Inland's first defense; American Cyanamid's second defense;

and Smithkline's first defense. *See* documents 10, 11, 12 and 14 of record.

*son,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ The instant complaint purports to state a claim under § 107(a) of CERCLA. *See* document 1 of record. As recently outlined by the United States Court of Appeals for the Eighth Circuit, in order to establish a *prima facie* case for liability under § 107 of CERCLA, a plaintiff must show that:

(1) the site is a "facility";

(2) a "release" or "threatened release" of a "hazardous substance" from the site has occurred;

(3) the release or threated release has caused the United States to incur response costs; and

(4) the defendants fall within at least one of the four classes of responsible persons described in § 107(a).

*United States v. Aceto Agricultural Chemicals Corp.,* 872 F.2d 1373, 1378–1379 (8th Cir.1989). *See also New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985); *T & F Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 708 (D.N.J.1988).

Initially, the complaint clearly avers that the site was a waste facility. *See* document 1 of record at ¶ 14–18. In addition, the complaint alleges that there was a release or threatened release of hazardous substances at the site which resulted in the incurrence of response costs by the Government, and that each of the defendants falls within the classes of responsible persons described in § 107(a). *See id.* Thus, the complaint has sufficiently alleged the elements necessary to state a claim for recovery of response costs under § 107(a) of CERCLA. Accordingly, the court will grant the Government's motion to strike the defendants' contentions that the complaint fails to state a claim for relief.

**2.** Inland's fourth defense; American Cyanamid's fifteenth defense; and Smithkline's fourth defense. *See* documents 11, 12, and 14 of record.

**3.** Marisol's seventh and eleventh defenses. *See* document 10 of record.

**2. Failure to Offer Proof of Imminent and Substantial Endangerment**

■ Defendants Inland, American Cyanamid and Smithkline assert that the Government has failed to allege or offer any proof of any actual or potential imminent and substantial endangerment to public health, welfare or the environment because of an actual or threatened release of a material which they generated.[2] The Government argues that these defenses should be stricken because no proof of imminent or substantial endangerment is required in a cost recovery action under § 107(a) of CERCLA. *See* document 40 of record at 18. The defendants do not further address this issue in their various responses to the Government's motion.

As the court views it, this defense must be stricken based upon the same reasoning that invalidated the defendants' assertions that the complaint failed to state a claim. Namely, the requirements for what a plaintiff must prove in order to state a claim under § 107(a) of CERCLA, as set forth above, *see supra.* (quoting *Aceto,* 872 F.2d at 1378–1379), do not require any allegation or proof of an imminent and substantial danger to public health, welfare, or the environment. The court will, therefore, grant the Government's motion to strike this defense from the answers of defendants Inland, American Cyanamid, and Smithkline.

**3. Act of Omission of a Third Party**

Defendant Marisol asserts that the release or threatened release of the hazardous substances at the Site, and the costs or damages resulting therefrom, were proximately caused by the acts or omissions of persons over whom it had no control, and that any harm was the result of the superseding, intervening illegal, criminal or tortious acts of third parties.[3] In addition, Marisol contends that it reasonably relied on authorized persons to dispose of its waste products lawfully.[4] In seeking to

**4.** Marisol's tenth defense. *See* document 10 of record.

have these defenses stricken, the Government argues that liability under § 107(a) of CERCLA is limited to the defenses enumerated in § 107(b). *See* document 40 of record at 20–24 and document 53 of record at 32–35. The Government further contends that the defense stated in § 107(b)(3), the provision dealing with third party defenses, is available only to a defendant who can affirmatively establish by a preponderance of the evidence that the release or threatened release and the damages resulting therefrom were caused solely by the ".... act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly with the defendant ..." *See* document 40 at 22 (quoting 42 U.S.C. § 9607).

■ A strong majority of courts have held that liability under § 107(a) of CERCLA is subject only to the defenses set out in § 107(b). *See Kelley v. Thomas Solvent Company,* 714 F.Supp. 1439, 1445–46, n. 3 (W.D.Mich.1989) (listing eleven cases). Thus, the only "third party" defense available to a defendant in an action under § 107(a) of CERCLA is that provided for in § 107(b)(3).

As the United States Court of Appeals for the Fourth Circuit observed, "[s]ection 107(b)(3) sets forth a limited affirmative defense based on the complete absence of causation." *United States v. Monsanto,* 858 F.2d 160, 168 (4th Cir.1988), *petition for cert. denied* — U.S. ——, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (No. 88–1404). In order to establish a defense under § 107(b)(3), a defendant would have to demonstrate that:

(1) a third party was the sole cause of the release of hazardous substances;

(2) the third party was not an employee or agent of the defendant;

(3) the acts or omissions of the third party did not occur in connection with a direct or indirect contractual relationship to the third party; and

(4) the defendant exercised due care with respect to the hazardous substances and took precautions against forseea-

ble acts and omissions of the third party.

*See Kelley,* 714 F.Supp. at 1446.

In its sixth defense, defendant Marisol maintains that it is not liable to the plaintiff by virtue of the defenses set forth in § 107(b). *See* document 10 of record at 10. Thus, as the Government readily admits, Marisol has clearly alleged a defense under § 107(b)(3). *See* document 40 of record at 21, n. 17 and document 53 of record at 33.

■ The seventh defense offered by Marisol, however, states that the damages alleged in the instant complaint were "proximately caused by acts or omissions of persons over whom Marisol had no control". *See* document 10 of record at 10. Marisol's seventh defense goes on to allege that Marisol exercised due care with respect to any alleged substances involved and took precautions against foreseeable acts or omissions of third parties. *See id.*

While the allegations of Marisol's seventh defense are similar to those required by § 107(b)(3), they fall short in two critical areas. First, Marisol is required by § 107(b)(3) to allege that the third party is the *sole* cause of the release. *O'Neil v. Picillo,* 682 F.Supp. 706, 712 (D.C.R.I.1988) (defendant must demonstrate that a *totally unrelated* party is the *sole* cause of the release.) (quoting *United States v. Stringfellow,* 661 F.Supp. 1053, 1061 (C.D.Cal. 1987)) (emphasis in original); *see also United States v. Mottolo,* 695 F.Supp. 615, 626 (D.N.H.1988). Despite this requirement, Marisol's seventh defense alleges only that the third party was the *proximate* cause. *See* document 10 of record at 10.

The second deficiency of Marisol's seventh defense, is that it alleges only that the acts or omissions were committed by persons over whom it had "no control". *See id.* In order to assert a defense under § 107(b)(3), however, a defendant must allege that the third party is not its employee or agent and that the acts or omissions did not occur in connection with a direct or indirect contractual relationship between the third party and the defendant. *See* 42 U.S.C. § 9607(b)(3). Similar defenses have

been held by other courts to be insufficient for failure to conform with the statutory requirements of § 107(b)(3). *See Kelley,* 714 F.Supp. at 1446; *see also United States v. B.R. MacKay & Sons, Inc.,* 13 Chem. Waste Lit.Rep. 253, 258 (N.D.Ill. 1986). [1986 WL 13717]. The court, therefore, agrees with the Government's contention that defendant Marisol's seventh defense must be stricken.

Marisol's tenth and eleventh defenses must also fail since they suffer from the same deficiency as the seventh defense. Namely, they do not conform with the statutory requirements of 107(b)(3).

Marisol's tenth defense states that it reasonably relied upon authorized persons to dispose of its waste products. *See* document 10 of record at 11. Once again Marisol attempts to assert a third party defense that does not comport with the statutory requirements of § 107(b)(3). Marisol's tenth defense will, therefore, be stricken.

As to its eleventh defense, Marisol asserts that the release of hazardous substances and resulting harm alleged in the complaint were caused by superseding, intervening, illegal, criminal, or tortious acts of third parties over whom it had no control. As with its seventh and tenth defenses, this attempt to plead a third party defense does not allege the statutory requirements of § 107(b)(3) and, therefore, must be stricken.

In arguing that its seventh, tenth, and eleventh defenses should not be stricken, Marisol argues that they present questions which clearly involve substantial issue of law and fact. *See* document 52 of record at 23. In support of this argument, Mari-

sol cites *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573 (D.Md.1986). As the Government points out, however, *Maryland Bank* dealt only with the question of whether there was sufficient factual evidence to support a third party defense allowed under § 107(b)(3). *See id.* at 581–82 (denying the Government's motion for summary judgment on the defendant's § 107(b)(3) defense).

In the instant case, Marisol, in its sixth defense, raises a § 107(b)(3) defense. *See* document 10 of record at 10. Nothing the court does today will in any way inhibit or prevent Marisol from developing a factual record in support of its properly raised § 107(b)(3) defense.

4. Defendants Exercised Due Care and Complied with the Law and Industry Practice and the United States was Negligent

Each of the answering defendants asserts that it acted with due care and complied with all statutory, regulatory and common law requirements regarding waste disposal.[5] Additionally, Marisol asserts that in disposing of its waste, it took precautions in accordance with the state of the art, trade customs and industry practice.[6] Defendants Inland, American Cyanamid, and Smithkline also raise the defense that the United States was contributorily negligent in causing the endangerment and/or assumed the risk of the consequences of its conduct.[7] The Government contends that because CERCLA imposes a scheme of strict liability, these defenses must be stricken. *See* document 40 of record at 24–28 and document 53 at 35–37.

■ It is clear that the majority of courts who have considered the issue have held that CERCLA imposes strict liability.[8]

**5.** Marisol's eighth defense; Inland's third defense; American Cyanamid's fourth and eighth defenses; and Smithkline's third defense. *See* documents 10, 11, 12, and 14 of record.

**6.** Marisol's ninth defense. *See* document 10 of record.

**7.** Inland's seventeenth and nineteenth defenses; American Cyanamid's sixth and twenty-third defense; Smithkline's seventeenth and nineteenth

defense. *See* documents 11, 12, and 14 of record.

**8.** *E.g., Aceto,* 872 F.2d at 1377 (8th Cir.1989); *Monsanto,* 858 F.2d at 167; *J.V. Peters & Co., Inc. v. E.P.A.,* 767 F.2d 263, 266 (6th Cir.1985); *Shore Realty Corp.,* 759 F.2d at 1042; *Mottolo,* 695 F.Supp. at 624; *Versatile Metals, Inc. v. Union Corp.,* 693 F.Supp. 1563, 1572 (E.D.Pa. 1988); *O'Neil,* 682 F.Supp. at 722 (citing *Violet v. Picillo,* 648 F.Supp. 1283, 1290–93 (D.R.I.1986)); *Stringfellow,* 661 F.Supp. at 1062; *United States*

Under CERCLA's strict liability scheme with its limited affirmative defenses, claims by defendants that they were not negligent or that they exercised due care cannot be used to avoid liability. *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 204 (M.D.Mo.1985). Indeed, the question of a defendant's use of due care is relevant only to the extent that it can be used as a component of the statutory defense provided for by § 107(b)(3).

Accordingly, the court will strike the defenses enumerated above in which the defendants claim that they exercised due care or that they complied with the law or with industry practice. Based upon the same reasoning, the court will also strike the defenses that relate to contributory negligence and/or assumption of the risk on the Government's part.[9]

### 5. No Direct or Proximate Cause

Each answering defendant avers that its conduct was not the cause in fact or the proximate cause of the releases or injuries alleged in the complaint.[10] In support of its motion to strike these defenses, the Government argues that CERCLA establishes liability without regard to traditional tort notions of causation and, therefore, defenses based upon lack of causation are insufficient to withstand a motion to strike. *See* document 53 of record at 23–28.

In *Monsanto*, the Fourth Circuit addressed the issue of causation in the following manner:

> As ultimately enacted after House and Senate compromise, however, CERCLA "imposed liability on classes of persons without reference to whether they caused or contributed to the release or threat of release." ... The legislature thus eliminated the element of causation from the plaintiff's liability case.

*Monsanto*, 858 F.2d at 170 n. 17 (citing *Shore Realty*, 759 F.2d at 1044). Thus, traditional tort notions such as proximate cause are inapplicable to actions brought under § 107(a) of CERCLA. *United States v. Bliss*, 667 F.Supp. 1298, 1309 (E.D.Mo.1987).

The minimal causal nexus required by CERCLA is met when the plaintiff proves by a preponderance of the evidence that the defendant's hazardous waste was deposited at the site and that the substances contained in the defendants' waste were also found at the site. *Violet v. Picillo*, 648 F.Supp. 1283, 1292 (D.R.I.1986) (citing *inter alia., United States v. Wade*, 577 F.Supp. 1326, 1333 (E.D.Pa.1983)). Indeed, to require the plaintiff to "fingerprint" wastes—*i.e.*, to tie specific wastes to specific defendants—would place too great a burden on the cost recovery actions, eviscerating the statute and defeating congressional intent. *Wade*, 577 F.Supp. at 1332. *See also Developments—Toxic Waste Litigation*, 99 Harv.L.Rev. 1458, 1548 (1986).

Thus, none of the instant defendants can escape liability under § 107(a) of CERCLA by arguing that, even though its hazardous waste was dumped at the Site, it was not the direct or proximate cause of the releases or injuries alleged in the complaint. The Government's motion to strike such defenses will, therefore, be granted.

### 6. The Government's Failure to Enforce Environmental Laws, Comply with CERCLA, Provide Notice, Mitigate Damages, and Enter into a Contract with Pennsylvania

Each of the defendants asserts defenses based upon the Government's alleged failure to take various statutory or procedural steps before bringing the instant action. Inland, American Cyanamid, and Smithkline claim that the Government generally failed to enforce its environmental laws

---

*v. Dickerson*, 640 F.Supp. 448, 451 (D.Md.1986); *Maryland Bank*, 632 F.Supp. at 576; *United States v. Price*, 577 F.Supp. 1103, 1114 (D.N.J. 1983); and *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1140–41 (E.D.Pa. 1982).

**9.** The court notes that neither American Cyanamid, Inland, nor Smithkline addressed the

Government's arguments supporting the striking of their defenses based upon contributory negligence or assumption of the risk in their opposition briefs. *See* documents 45 and 50 of record.

**10.** Marisol's seventh defense; Inland's second defense; American Cyanamid's twelfth defense; Smithkline's second defense. *See* documents 10, 11, 12 and 14 of record.

and protect the environment.[11] American Cyanamid asserts that the Government itself failed to conform its actions to the requirements of CERCLA.[12] Inland, American Cyanamid, and Smithkline further allege that they had no knowledge of the endangerment or the related response costs incurred by the Government and that the Government failed to provide proper notice to them before undertaking the response actions.[13] Additionally, all four answering defendants aver that the Government failed to take proper steps to mitigate damages.[14] Finally, defendants Inland, American Cyanamid, and Smithkline claim that the Government has not averred that it entered into a contract or cooperation agreement with the Commonwealth of Pennsylvania pursuant to § 104(c)(3) of CERCLA.[15] *See* 42 U.S.C. § 9604(c)(3).

The Government contends that these defenses must be stricken because CERCLA imposes no statutory or procedural prerequisites to the commencement of an action under § 107. *See* document 40 of record at 30–36 and document 53 of record at 28–32. Moreover, the Government's argument continues, there is no duty upon the Government to mitigate damages as it is authorized by CERCLA to recover all response costs not inconsistent with the National Contingency Plan (NCP). *See id.*

■ As the plain language of § 107 of CERCLA states, liability for response costs is imposed upon those parties identified in § 107(a) "notwithstanding any other provision or rule of law". 42 U.S.C. § 9607. Thus, there are no statutory or procedural prerequisites to a cost recovery action under § 107(a). *Kelley,* 714 F.Supp. at 1446–47; *see also United States v. Miami Drum Services, Inc.,* 25 Env't Rep.Cas. 1469, 1479 (S.D.Fla.1986) [available on WESTLAW at 1986 WL 15327]; *Wade,* 577 F.Supp. at 1336 (citing *United States v. Rielly Tar and Chemical Corp.,* 546 F.Supp. 1100, 1118 (D.Minn.1982)).

Accordingly, any defenses offered by the instant defendants which argues that liability for response costs may be excused because of the Government's failure to take certain statutory or procedural steps before bringing this action, are insufficient as a matter of law. These defenses include, *inter. alia,* the claims that the defendants were entitled to notice from the Government under § 104 of CERCLA and that the Government failed to enter into a contract or cooperative agreement with the Commonwealth of Pennsylvania pursuant to § 104(c)(3) of CERCLA. The court will, therefore, grant the Government's motion to strike these defenses.

■ With respect to the claims of the defendants that they are not liable for response costs because the Government failed to mitigate damages, the court finds no persuasive authority which imposes a legal duty upon the Government to mitigate damages in a CERCLA action. *But see United States v. Hardage,* 116 F.R.D. 460, 466–67 (W.D.Okla.1987). Conversely, the court concludes that a finding that § 107 imposes no duty to mitigate costs on the Government would be consistent with the broad and independent liability scheme inherent in § 107. *See Kelley* 714 F.Supp. at 1451. The court will, therefore, grant the Government's motion to strike this defense.

### 7. Joint and Several Liability Not Proper

Defendants Inland, American Cyanamid, and Smithkline assert that their liability should be proportionate to their contribu-

---

**11.** Inland's fifteenth defense; American Cyanamid's twenty-second defense, and Smithkline's fifteenth defense. *See* documents 11, 12 and 14 of record.

**12.** American Cyanamid's fifth defense. *See* document 13 of record.

**13.** Inland's thirteenth defense; American Cyanamid's seventh defense; and Smithkline's thirteenth defense.

**14.** Marisol's thirteenth defense; Inland's fourteenth defense; American Cyanamid's twenty-first defense; and Smithkline's fourteenth defense. *See* documents 10, 11, 12, and 14 of record.

**15.** Inland's seventh defense; American Cyanamid's sixteenth defense; Smithkline's seventh defense. *See* documents 11, 12, and 14 of record.

tion to the endangerment and costs, taking into account the percentage of total volume of materials disposed of at the site, the nature and relative toxicity of the materials and the relative contributions of the other defendants.[16] These three defendants also contend that the response actions taken by the Government were unrelated to the defendant's particular waste,[17] and that the imposition of joint and several liability is not proper in this case under CERCLA.[18] The Government argues that these defenses are insufficient as a matter of law because CERCLA imposes joint and several liability subject only to the limited defense of divisibility of harm. *See* document 40 of record at 36–40 and document 53 of record at 12–13.

Courts have consistently held that except where harm is divisible, liability under CERCLA is joint and several. *Kelley,* 714 F.Supp. at 1448, n. 6 ("the courts have uniformly agreed that although the phrase 'joint and several liability' does not appear on CERCLA's face, Congress intended the doctrine be applied in appropriate circumstances." ...). Thus, joint and several liability under CERCLA is appropriate where traditional and evolving principles of common law would require it. *Monsanto,* 858 F.2d at 171–172.

■ Accordingly, as the Government freely admits, the joint and several liability imposed by CERCLA is subject to a limited defense based upon the common law doctrine of divisibility of harm. The burden of demonstrating that the harm suffered is, in fact, divisible, and that, therefore, joint and several liability does not apply, rests with the defendants. *Kelley,* 714 F.Supp. at 1448 (citing, *inter alia, United States v.*

*Ottati & Goss, Inc.,* 630 F.Supp. 1361, 1396 (D.N.H.1985)).

Under common law rules, when two or more persons act independently to cause a single harm for which there is a reasonable basis of apportionment according to the contribution of each, each is held liable only for the portion of the harm that he causes. *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260–61 n. 8, 99 S.Ct. 2753, 2756–57 n. 8, 61 L.Ed.2d 521 (1979). When such persons cause a single and indivisible harm, however, they are held liable jointly and severally for the entire harm. *Id.* (citing Restatement (Second) of Torts § 433A (1965)). These principles have been held to represent the correct and uniform rules applicable to CERCLA cases. *Monsanto,* 858 F.2d at 171–172.

■ The court believes that the defenses challenged here can fairly be read as alleging divisibility of harm. Thus, the court feels that the defendants are at the very least entitled to conduct some discovery on these defenses. The Government's motion to strike these defenses is, therefore, denied.

### 8. Waste is *De Minimis* or Not Hazardous

Defendants Inland and Smithkline assert that the toxicity and volume of waste which they brought to the Site is *de minimis* when compared to that of other parties.[19] Additionally several defendants argue that some or all materials disposed of at the Site did not contain hazardous substances as defined under CERCLA.[20] The Government maintains that because CERCLA makes no provision for a *de minimis* defense to liability, those defenses must be stricken as a matter of law. *See* document

---

**16.** Inland's tenth defense; American Cyanamid's eighteenth defense; and Smithkline's tenth defense. *See* documents 11, 12, and 14 of record.

**17.** Inland's twenty-second defense; American Cyanamid's eighteenth defense; and Smithkline's twenty-fifth defense; and Smithkline's twenty-second defense. *See* documents 11, 12, and 14 of record.

**18.** Inland's ninth defense; American Cyanamid's seventeenth defense; and Smithkline's ninth

defense. *See* documents 11, 12, and 14 of record.

**19.** Inland's and Smithkline's twentieth defense. *See* documents 11 and 12 of record.

**20.** Inland's twenty-first defense; American Cyanamid's twenty-fourth defense; and Smithkline's twenty-first defense. *See* documents 11, 12, and 14 of record.

40 of record at 41–43 and document 53 of record at 18–23.

■ The court agrees with the Government's contention that there is no *de minimis* defense to liability under CERCLA. *Colorado v. Idarado Mining Co.*, 707 F.Supp. 1227, 1243 (D.Colo.1989) (citing *Conservation Chemical Co.*, 619 F.Supp. 162). Nevertheless, as several courts have pointed out, the question of the relative contribution of a particular defendant to a waste site may impact upon the issue of joint and several liability. *Violet*, 648 F.Supp. at 1287 (citing *Idaho v. Bunker Hill Co.*, 635 F.Supp. 665, 677 (D.Idaho 1986)); *see also Wade*, 577 F.Supp. at 1341 ("... a defendant whose sole contribution to a hazardous waste dump site was a copper penny would not be responsible for the entire cost of cleaning up the site.")

Thus, to the extent that the challenged defenses can be read as alleging divisibility of harm, the defendants should be allowed to develop a factual record to support them. The court will, accordingly, deny the Government's request to strike these defenses.

### 9. Failure to Join a Necessary or Indispensable Party

Each of the answering defendants avers that the Government has failed to join necessary or indispensable parties.[21] The Government argues that because liability under CERCLA is joint and several, these defenses are insufficient as a matter of law and must be stricken. *See* document 40 of record at 44–46 and document 53 of record at 38–39.

■ As discussed above, liability under CERCLA is joint and several. *Kelley*, 714 F.Supp. at 1448, n. 6. In a case in which two or more parties are jointly and severally liable, the plaintiff need not sue and join all those potentially liable. *Id.* citing, *inter alia*, *United States v. Dickerson*, 640 F.Supp. 448, 450 (D.Md.1986)).

As the *Dickerson* court stated:

The courts have consistently rejected attempts by CERCLA defendants to compel the government to round up every other available defendant, noting that defendants can protect themselves through the impleader provision of Rule 14.

640 F.Supp. at 450. This court, like the court in *Kelley*, agrees with the weight of authority allowing the Government wide discretion when choosing among joint tortfeasors. *Kelley*, 714 F.Supp. at 1450.

In *United States v. A & F Materials Co., Inc.*, 578 F.Supp. 1249 (S.D.Ill.1984) and *United States v. Conservation Chemical*, 589 F.Supp. 59 (W.D.Mo.1984) courts dealing with this issue followed the Advisory Committee Note to Rule 19 of the Federal Rules of Civil Procedure which deals with necessary and indispensable parties. The Note states that Rule 19 "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint and several' liability is merely a permissive party to an action against another with like liability ... Joinder of these tortfeasors continue to be regulated by Rule 20; compare Rule 14 on third-party practice." Advisory Committee Notes 39 F.R.D. 69, 91 (1966).

Moreover, as the Government points out in its supporting brief, even if the defendants can establish that joint and several liability should not be imposed, they will not be prejudiced by the absence of other potentially liable parties. *See* document 40 at 45. As the *A & F Materials* court observed:

If [defendant] can establish that its contribution to the injury is divisible and capable of apportionment, it will not run the risk of multiple liability. Further, [defendant] can protect itself through the impleader provision of Rule 14.

578 F.Supp. at 1261. *See also Kelley*, 714 F.Supp. at 1450.

For these reasons, the court finds the defendants' allegations that the Government failed to join indispensable or necessary parties to this action to be insufficient defenses to this action. The court will, therefore, grant the Government's motion to strike these defenses.

---

**21.** Marisol's third defense; Inland's sixteenth defense; American Cyanamid's tenth defense; and Smithkline's sixteenth defense. *See* documents 10, 11, 12, and 14 of record.

### 10. Equitable Defenses

Various equitable defenses are asserted by each of the answering defendants. For example, defendant American Cyanamid claims that the principles of equity preclude the remedy sought by the Government, and that the Government has waived its rights by its acts, conduct, or omissions.[22] In addition, all the defendants assert the defense of laches,[23] and all but Marisol assert the defense of unclean hands.[24] The Government argues that equitable defenses are not available under CERCLA and that these defenses are insufficient as a matter of law and must be stricken. *See* document 40 of record at 47–52 and document 53 of record at 13–17.

In support of their motion to strike these defenses, the government makes two arguments. First, the Government contends that the defenses listed in § 107(b) are exclusive, and, consequently, that the equitable defenses are not available to the defendants in this action. *Kelley,* 714 F.Supp. at 1451. The Government's second argument is that even if equitable defenses are not excluded by § 107(b) of CERCLA, equitable defenses are, nevertheless, unavailable to the defendants in this action because of the well established doctrine that the sovereign is immune from equitable doctrines when it asserts public rights. *Pan American Petroleum & Transport Co. v. United States,* 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734 (1927).

 There is a substantial body of case law holding that equitable defenses are not available under § 107 of CERCLA. *Smith Land and Improvement Corporation v. Celotex Corporation,* 851 F.2d 86, 90 (3d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989) ("Doctrine such as caveat emptor and 'clean hands' ... do not comport with congressional objectives [of CERCLA]"; *see also General Electric*

*Co. v. Litton Business Systems, Inc.,* 715 F.Supp. 949, 955–56 (W.D.Mo.1989) (doubtful whether unclean hands doctrine is applicable in CERCLA cases); *Kelley,* 714 F.Supp. at 1451 (CERCLA bars defenses outside the ambit expressly provided in § 107(b)); *Idarado Mining Co.,* 707 F.Supp. at 1232 (the only affirmative defenses which may be asserted are listed in § 107(b) of CERCLA). Similarly, many of these same counts have held that even if equitable defenses are not precluded by CERCLA, such defenses cannot be raised against the sovereign when it is acting to protect the public interest. *See e.g., Kelley,* 714 F.Supp. at 1451.

The proposition that equitable defenses are not available in CERCLA cases has not, however, met with universal approval. Many courts have concluded that equity defenses are available to CERCLA defendants in actions initiated by either Government or private plaintiffs. *See United States v. Moore,* 703 F.Supp. 460, 462 (E.D. Va.1988) (declining to automatically strike equitable defenses); *Mottolo,* 695 F.Supp. at 627 (concluding that equitable defenses are available because § 107 of CERCLA neither explicitly restricts nor refers to equity jurisdiction); *Merry v. Westinghouse,* 684 F.Supp. 852, 857 (M.D.Pa.1988) (Caldwell, J.) (holding that because CERCLA action for cost reimbursement is equitable in nature, the defense of laches is available); *Conservation Chemical Co.,* 619 F.Supp. at 213 (refusing to strike defense of laches; *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1057 (D.Ariz.1984), *aff'd on other grounds,* 804 F.2d 1454 (9th Cir.1986) (approval of unclean hands defense in a private cost recovery action); *United States v. Hardage,* 116 F.R.D. at 465 (refusing to strike equitable defenses).

Thus, as the court has attempted to illustrate, the question of whether equitable

---

**22.** American Cyanamid's third and eleventh defenses. *See* document 14 of record.

**23.** Marisol's fifth defense; Inland's eleventh and eighteenth defense; American Cyanamid's nineteenth defense; and Smithkline's eleventh and eighteenth defense. *See* documents 10, 11, 12, and 14 of record.

**24.** Inland's twelfth defense; American Cyanamid's twentieth defense; and Smithkline's twelfth defense. *See* documents 11, 12, and 14 of record.

defenses are available in a CERCLA action is hardly a settled issue as a matter of law. As a result, the court is unable to conclude that the equitable defenses raised by the instant defendants are "clearly insufficient as a matter of law." Accordingly, the court holds that to strike these defenses at this early stage of the litigation, before a factual record has been developed, would be premature. For these reasons, the Government's motion to strike these defenses will be denied.

### 11. Constitutionality of CERCLA

■ Defendant Marisol asserts that the Government's attempt to impose liability on it violates the *ex post facto* provision of the constitution.[25] The Government argues that CERCLA is neither unconstitutionally retroactive nor violative of the constitution's *ex post facto* provision. *See* document 40 of record at 52–57.

Initially, the court notes that in responding to the Government's motion to strike, Marisol makes no effort to defend the sufficiency of its claim that CERCLA is unconstitutional. Moreover, in light of the great weight of authority pronouncing CERCLA constitutional, it is unlikely that Marisol could plausibly assert such an argument in support of its defense. *See O'Neil v. Picillo*, 883 F.2d 176, 183 n. 12 (1st Cir.1989); *Monsanto*, 858 F.2d at 173–75; *United States v. Northeastern Pharmaceutical and Chemical Co.*, 810 F.2d 726, 732–734 (8th Cir.1986); *Kelley*, 714 F.Supp. at 1443–1444; *United States v. Hooker Chemical and Plastics Corp.*, 680 F.Supp. 546, 557 (W.D.N.Y.1988); *Dickerson*, 640 F.Supp. at 451; and *Conversation Chemical Co.*, 619 F.Supp. at 221–22.

Thus, considering the substantial body of authority finding CERCLA to be constitutional, the court finds Marisol's twelfth defense to be insufficient as a matter of law. The Government's motion to strike that defense will be granted.

### 12. Propriety of Response Costs

■ Defendants Inland, American Cyanamid, and Smithkline claim that the costs incurred by the Government are not proper response costs under CERCLA.[26] In addition, defendant Marisol asserts that any alleged costs incurred in the future are not recoverable as they are remote, speculative, and contingent.[27] The Government alleges that such costs are recoverable because they are not inconsistent with the National Contingency Plan (NCP), and that these defenses must be stricken. *See* document 40 of record at 57–60.

Pursuant to § 107(a) of CERCLA, responsible parties are liable for all costs of removal or remedial actions which are "not inconsistent with the national contingency plan." *See* 42 U.S.C. § 9607(a)(2), (4)(A). The NCP is set out at 40 C.F.R. Part 300 and contains the standards governing whether response costs are recoverable. Defendants have the burden of proving that response costs are inconsistent with the NCP. *Northeastern Pharmaceutical and Chemical*, 810 F.2d at 747–48.

In the instant case, each of the defendants has asserted that the Government's response costs are inconsistent with the NCP. Additionally, defendants Inland, American Cyanamid, and Smithkline go on to assert that the response costs alleged by the Government are not "proper." As the Government points out, however, whether response costs are "proper" has no meaning under CERCLA. *See* document 40 at 58. The sole standard for recoverability of costs is that they must be consistent with the NCP.

Defendants are able to point to no statutory provision nor any court decisions which allow CERCLA defendants to raise defenses based solely on the propriety of response costs without reference to the NCP. The court will, therefore, strike these defenses.

---

**25.** Marisol's twelth defense. *See* document 10 of record.

**26.** Inland's fifth defense; American Cyanamid's fourteenth defense; and Smithkline's fifth defense. *See* documents 11, 12, and 14 of record.

**27.** Marisol's fifteenth defense. *See* document 10 of record.

Similarly, Marisol's defense that the Government may not recover costs because they are remote, speculative and contingent, must fail. As the Government points out, a point with which defendant Marisol apparently agrees, *see* document 52 of record at 15–16, § 113(g)(2) of CERCLA authorizes the court to enter a declaratory judgment on liability for future response costs. *See* 42 U.S.C. § 9613(g)(2). Thus, in challenging any future response costs, Marisol would be free to allege that those costs are not recoverable because of inconsistency with the NCP. Marisol's fifteenth defense will be stricken.

### 13. Statute of Limitations

Defendant Marisol argues that this action is barred by the statute of limitations.[28] The Government replies that the action was commenced within three years of the completion of the removal as required by the applicable limitations period, *see* 42 U.S.C. 9613(g)(2), and that even if the date of completion is contested, the statute of limitations would not bar this action. *See* document 40 of record at 60–62.

█ The court agrees with the Government *for two reasons.* First, if the removal was completed on the date the Government claims it was, February, 1987, then this action filed on September 30, 1988 is well within the statute of limitations. Secondly, in the event that Marisol claims that the actual completion date was more than three years prior to the September 30, 1988 filing, the statute of limitations would not bar this action because the limitations provision, enacted as part of the 1986 Superfund Amendments, operates prospectively only and has no retroactive application to claims accruing prior to its enactment in October, 1986. *Merry,* 684 F.Supp. at 857; *United States v. Moore,* 698 F.Supp. 622,

625–27 (E.D.Va.1988). Thus, the court will grant the Government's motion to strike this defense.

### 14. Subject Matter Jurisdiction

Marisol claimed in its answer that this court lacks subject matter jurisdiction. *See* document 10 of record at 9. In opposing the motion to strike, however, they offer no argument in support of this defense. Moreover, in light of the fact that this court indisputably has jurisdiction over this action, *see* 42 U.S.C. § 9613(b), such argument would be futile and Marisol's first defense will be stricken.

### III. *Conclusion*

For all of the above reasons, the Government's motion to strike is granted in part and denied in part. An appropriate Order will enter.

---

**28.** Marisol's fourth defense. Document 10 of record.