UNITED STATES of America, Plaintiff,

v.

FAIRCHILD INDUSTRIES, INC.,

and

Cumberland Cement & Supply Co., Defendants.

UNITED STATES of America, Plaintiff,

v.

KELLY–SPRINGFIELD TIRE CO., Precise Metals & Plastics, Inc.,

and

Joseph Diggs, Defendants.

Civ. A. Nos. R–88–2933, R–89–2870.

United States District Court, D. Maryland.

May 2, 1991.

Arnold Rosenthal, Seth Low, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Enforcement Section, Washington, D.C., for plaintiff.

Tracy Getz, Winston and Strawn, Washington, D.C., for defendant Farichild Industries, Inc.

Philip M. Andrews, Kramon & Graham, Baltimore, Md., for defendant Cumberland Cement & Supply Co.

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is plaintiff United States of America's motion to strike certain defenses of the various defendants. This motion has

## I. FACTUAL BACKGROUND [1] AND PROCEDURAL HISTORY

This case involves a 210 acre tract of land located near Cumberland, Maryland known as the Limestone Road Site. In 1982, the EPA tested the site and found high levels of inorganic and organic compounds considered hazardous under the Comprehensive Environmental Response, Compensation and Liability Act ("CERC-LA"), 42 U.S.C. § 9601, et seq. Subsequently, the site was placed on the National Priorities List. The EPA has continued to study the site; in 1986, the EPA issued a Record of Decision which discussed interim remedial action and also called for further study and plan development.

On September 11, 1988, the United States filed a complaint against defendants Cumberland and Fairchild. The United States sought injunctive relief under 42 U.S.C. § 9606 as well as cost recovery under 42 U.S.C. § 9607.[2] The injunctive claim was settled through a Partial Consent Decree entered by the Court on February 28, 1990.

On October 12, 1989, the United States filed another complaint involving the Limestone Road Site, this one against defendants Kelly–Springfield, Precise Metals and Joseph Diggs. This second case was later consolidated with the first.

The United States seeks judgment against the defendants, jointly and severally, for costs incurred by the United States which are not inconsistent with the National Contingency Plan. CERCLA § 107; 42 U.S.C. § 9607. The United States also asks the Court to enter declaratory judgment regarding defendants' liability for further clean-up costs related to the Limestone

---

1. The facts are taken from the United States's first memo. The Court has not made any findings of fact, but merely relates some background here in order to provide a context for the legal issues involved in the case.

2. The U.S. asserts that as of 1987 it had expended at least $1,312,973.76 on response actions.

Road Site. CERCLA § 113; 42 U.S.C. § 9613.

## II. PLAINTIFF'S MOTION TO STRIKE INSUFFICIENT DEFENSES

On April 2, 1990, the United States filed a motion to strike insufficient defenses of defendants Fairchild and Cumberland. On May 7, 1990, the United States filed much the same motion against defendants Kelly–Springfield and Precise Metals. The United States has organized the many defenses at issue into ten categories based on the substance of the defense. The defendants have also referred to this organization in their opposition memoranda, and the Court, for convenience, shall do the same.

## III. STANDARDS ON A MOTION TO STRIKE

■ Federal Rule of Civil Procedure 12(f) provides that: "Upon motion ... the court may order stricken from any pleading any insufficient defense...." A motion to strike is a drastic remedy and is therefore not favored. 5A C. Wright and A. Miller, *Federal Practice and Procedure: Civil*, § 1380 at 647; *Steuart Investment Co. v. Bauer Dredging Const. Co.*, 323 F.Supp. 907, 909 (D.Md.1971). Specifically, a motion to strike insufficient defenses, "should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law." *U.S. v. Marisol, Inc.*, 725 F.Supp. 833, 836 (M.D. Pa.1989) (a CERCLA case).

> "The court must review with extreme scrutiny a motion to strike which seeks the opportunity to determine disputed and substantial questions of law, particularly when no significant discovery has occurred in the case."

*U.S. v. Hardage*, 116 F.R.D. 460, 463 (W.D. Okl.1987) (a CERCLA case). Such questions of law "quite properly are viewed as determinable only after discovery and a hearing on the merits." 5A C. Wright and A. Miller § 1381 at 674–6. Thus, "even when technically appropriate and well-founded, [a motion to strike is] often not granted in the absence of a showing of prejudice to the moving party." 5A C. Wright and A. Miller § 1381 at 672.

Having stated these points, it is equally important to recognize that a motion to strike insufficient defenses does

> "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case."

*Marisol*, 725 F.Supp. at 836.

> "[A] defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted."

5A C. Wright and A. Miller § 1381 at 665.

■ In sum, the court should strike defenses which cannot succeed under any set of circumstances; however, where there is any question of fact or any substantial question of law, the court should refrain from acting until some later time when these issues can be more appropriately dealt with. These are the standards under which this Court shall consider plaintiff's motions.

## IV. THE DEFENSES AT ISSUE

### A. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [3]

Defendant Fairchild does not oppose the U.S.'s motion to strike this defense. *See* Fairchild Opp. at 2 n. 2. Defendants Precise Metals and Kelly–Springfield do oppose the government's motion to strike this defense.[4] Kelly–Springfield argues that the defense of failure to state a claim raises substantial questions of law and also implicates factual issues such that striking this defense would be improper. Precise Metals argues that there are several affirmative defenses which the U.S. has not moved to strike and that this indicates that

---

**3.** Cumberland defense # 1; Fairchild # 1; Kelly–Springfield # 1; Precise Metals #s 1 and 2.

**4.** Defendant Cumberland adopts Fairchild's opposition and does not specifically discuss this issue.

the U.S. may indeed have failed to state a claim.

■ A motion to dismiss for failure to state a claim is a means for testing the legal sufficiency of a complaint. When deciding the motion, a court must take all well-pleaded material allegations of the complaint as admitted. A complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented. However, "a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2A Moore's Federal Practice § 12.08 at 2271–74 (2d Ed. 1983) (emphasis in original).

■ In this case, the United States has properly alleged all of the elements of a *prima facie* case for liability under 42 U.S.C. § 9607: that the site is a facility within the meaning of the statute, that a release or threatened release of hazardous substance has occurred, that the release has caused the government to incur response costs not inconsistent with the national contingency plan, and that each defendant is a covered person. *See U.S. v. Monsanto Co.,* 858 F.2d 160, 167 (4th Cir. 1988); *Retirement Community Developers, Inc. v. Merine,* 713 F.Supp. 153, 155 (D.Md.1989).

There is no substantial question of law: these elements have been clearly outlined in this circuit and in others. *See United States v. Aceto Agricultural Chemicals Corp.,* 872 F.2d 1373 (8th Cir.1989); *New York v. Shore Realty Corp.,* 759 F.2d 1032 (2nd Cir.1985). There is no issue of fact: this defense relates only to the sufficiency of plaintiff's allegations. Defendants may ultimately prevail on one or more of their affirmative defenses; this is irrelevant to the issue of the sufficiency of the allegations. Accordingly, this Court will strike defendants' affirmative defense of failure to state a claim.

## B. LACK OF PROOF OF IMMINENT AND SUBSTANTIAL ENDANGERMENT[5]

■ Again, Fairchild has not opposed the striking of this affirmative defense. *See* Fairchild Opp. at 2 n. 2. Precise Metals, however, does oppose the government's motion to strike this defense.

Section 107 of CERCLA (42 U.S.C. § 9607) does not itself require that the government prove imminent and substantial endangerment in order to recover its response costs. It requires only proof of the elements listed above in part A. This is in contrast to the emergency abatement provision of § 106 (42 U.S.C. § 9606) which by its terms requires proof of imminent and substantial endangerment before action may be taken. Accordingly, in *U.S. v. Conservation Chemical Co.,* 619 F.Supp. 162, 184 (D.C.Mo.1985), the court stated that "[p]roof of 'imminent and substantial endangerment' . . . is not required in a Section 107 action." (The court went on to consider the necessity of this proof in a § 106 action.) The court in *Marisol, supra,* also held that § 107 does not require "any allegation or proof of an imminent and substantial endangerment to public health, welfare, or the environment," 725 F.Supp. at 837, and therefore granted the government's motion to strike this defense.

Precise Metals acknowledges that CERCLA § 107 does not itself require this proof. Instead, defendant compares the language of § 107 (which lacks this requirement) with that of § 106 (which expressly requires such proof) and infers that

> "[i]t is evident that Congress meant to have some type of standard upon which the government and reviewing judiciary may judge an agency's response to a perceived threat to the public or the environment."

Precise Metals Opp. at 17.

The standard by which the reviewing judiciary is to judge an agency's response is provided by the National Contingency Plan [NCP] with which a cost-recovery plain-

---

5. Cumberland # 19; Fairchild #s 21 and 24; Precise Metals # 5.

tiff's response costs must conform. 42 U.S.C. § 9607(a)(4)(A) (covered person "shall be liable for—all costs of removal or remedial action incurred by the United States Government [ ...] not inconsistent with the national contingency plan.") Defendants may attack the government's incurred costs as being inconsistent with the NCP; they may not require that the government prove imminent and substantial endangerment when this proof is not required by the relevant statute. Accordingly, the Court will strike defendants' defense of lack of imminent and substantial endangerment.[6]

## C. DEFENSES BASED ON DUE CARE, FORESEEABILITY, NEGLIGENCE, CONTRIBUTORY NEGLIGENCE, MISFEASANCE OR NONFEASANCE [7]

Defendants have asserted a number of defenses which the U.S. attacks as being inconsistent with CERCLA's strict liability scheme. Defendants Fairchild, Kelly–Springfield and Precise Metals argue that they exercised due care and complied with applicable state and federal laws and regulations. Defendants also argue that any damages suffered by the U.S. are a consequence of its own failure to regulate and/or that these damages were not foreseeable. Defendants assert contributory negligence on the part of the U.S. as a bar to plaintiff's recovery.

It is well-established in this Circuit that CERCLA sets forth a strict liability scheme. *Monsanto*, 858 F.2d at 167. Thus, defenses which would be relevant to a negligence standard—foreseeability, contributory or comparative negligence, due care—are irrelevant in determining CERCLA liability. *See Marisol*, 725 F.Supp. at 839–40; *U.S. v. Dickerson*, 640 F.Supp. 448, 451 (D.Md.1986) (striking defenses).

These defenses are also irrelevant in determining the scope of liability, whether joint and several or apportioned. Defendants may indeed argue the propriety of apportionment. Their argument, however, must go to the divisibility of the harm not the relative negligence of the parties. Under *Monsanto*, the characteristics of the harm are the governing considerations in deciding the propriety of apportionment and issues of negligence have no place in this determination.

"The generator defendants bore the burden of establishing a reasonable basis for apportioning liability among responsible parties. [ ...] To meet this burden, the generator defendants had to establish that the harm at Bluff Road was divisible among responsible parties."

*Monsanto*, 858 F.2d at 172.

These negligence-based defenses have no place in the United States's action against defendants as they are irrelevant to the determination of the existence and scope of defendants' potential liability to the United States. Accordingly, the Court will strike

---

**6.** *See also* Susan M. Cooke *The Law of Hazardous Waste* (1987 and 1991 Supp.), § 14.01[8][c][D]. "Section 107 itself contains no reference to any requisite quantum of risk, in contrast to Section 106 which requires an 'imminent and substantial endangerment to the public health or the environment,'" § 14.01[8][c][D] at 14–160.21, and a Section 107 "threatened release" "need not constitute an 'imminent and substantial endangerment ....'" § 14.01[4][b][iv] at 14–28.

The Fifth Circuit in *Amoco Oil v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989), considered the statutory definition of "response," "remove," and "remedy" in determining what constitutes a proper response for which plaintiffs can claim cost recovery. The court held that "to justifiably incur response costs, one necessarily must have acted to contain a release threatening the

public health or the environment." 889 F.2d at 669–70. A plaintiff meets this requirement "if it is shown that *any* release violates, or any threatened release is likely to violate, *any* applicable state of federal standard including the most stringent." *Id.* at 671 (emphasis in original).

This court does not mean to indicate that it would or would not follow the Fifth Circuit's holding in *Amoco.* The case is worth noting, however, because in its reasoning, the court takes into account the concerns described by defendant Precise Metals and still refuses to require proof of imminent and substantial endangerment.

**7.** Cumberland #s 4, 15, 16, Amended Answer para. 7; Fairchild #s 2, 3, 5, 16 and 17; Kelly–Springfield #s 11, 13, 15 and 16; Precise Metals # 3.

these defenses.[8]

### D. DEFENSES BASED ON THE CONDUCT OF THIRD PARTIES [9]

The U.S. has moved to strike defenses which are based on the conduct of third parties but which do not conform to the statutory language. Fairchild argues that these defenses should be retained because they are relevant to the issue of apportionment. Kelly–Springfield argues that it is unduly legalistic to strike the defenses for not "parroting" the statute.

CERCLA § 107(b) (42 U.S.C. § 9607(b)) lists limited defenses to liability for persons otherwise liable under § 107(a).

"There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly with the defendant [ ... ] if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions [ ... ]"

The Fourth Circuit has characterized subsection (b)(3) as "a limited affirmative de-

fense based on the complete absence of causation." *Monsanto,* 858 F.2d at 160. In *U.S. v. Marisol,* 725 F.Supp. 833 (M.D. Pa.1989), the Pennsylvania District Court quoted this language and went on to strike third-party defenses which did not conform to the statute. 725 F.Supp. at 838–39. The court required the defendant to allege facts in specific conformity with the statute's provisions. *Id.*

This Court shall do the same. The detailed provisions of subsection (b)(3) demonstrate that Congress did not intend there to be a general third-party defense; instead, a party must allege and prove a specific set of facts: that the third party was the *sole* cause of the release; that the third party was not an employee or agent of the defendant and that the third party's acts did not occur in connection with a contractual relationship with the defendant; and that the defendant exercised due care and specifically guarded against the foreseeable acts or omissions of the third party. 725 F.Supp. at 838.

The Court does not see these proffered defenses as relevant to the divisibility of harm, as that issue has been defined by the Fourth Circuit in *Monsanto, supra.* Nor is it acceptable for the Court to accept something "close to" the defense when the statute itself limits the permissible allegations. To the extent that defendants have a proper third-party defense, they may certainly amend their answers to assert the defense.[10] At present, however, the Court will strike the defenses improperly alleged.

### E. FAILURE TO COMPLY WITH CERCLA; FAILURE TO PROVIDE DEFENDANTS WITH NOTICE AND OPPORTUNITY TO RESPOND; FAILURE TO MITIGATE DAMAGES [11]

Defendants have asserted a number of defenses related to the propriety of

---

**8.** In *Monsanto,* the Fourth Circuit recognized that the "primary consideration" in a government cost-recovery action was "making the government whole for response costs," 858 F.2d at 173, so that the negligence based defenses are irrelevant to the issues surrounding the existence and scope of the defendants' potential liability to the U.S. On the other hand, equitable considerations of relative fault are relevant in dividing damages between the ultimately liable defendants. *See* below part G.

**9.** Cumberland # 18; Fairchild #s 19 and 20; Kelly–Springfield #s 8, 9 and 12.

**10.** To the extent that defendants mean to assert that they are not covered parties under CERCLA § 107(a), *see* Fairchild # 19, Kelly–Springfield # 8, they may also amend answers to properly state this.

the government's response to the presence of hazardous materials at the site. These defenses include the failure of the government to comply with CERCLA's procedural provisions (42 U.S.C. §§ 9604, 9611 and 9612), the failure of the government to provide defendants with notice and the opportunity to respond before the government responded, the failure of the government to mitigate damages, and the failure of the government to properly document and reasonably incur response costs. The U.S. has moved to strike these defenses as being irrelevant to the scheme of liability contained in CERCLA § 107; the U.S. argues that CERCLA imposes no prerequisites for bringing a § 107 cost recovery action.

The First Circuit thoroughly analyzed this issue in *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074 (1st Cir.1986). The court in *Dedham Water* began by "considering and rejecting [the] broad claim that sections 107 and 112 are entirely independent from each other." *Id.* at 1078. The court then went on to consider the specific provisions of § 112 at issue—the notice provision—and held that it applied to claims against the Superfund but not to § 107 cost recovery actions. *Id.* at 1079–82. This construction reflects and furthers the "dual legislative purposes" of CERCLA:

> "that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal [and] that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created."

*Id.* at 1081 (citation omitted). Thus, the specific procedures of § 112 which are necessary to conserve the limited resources of the Superfund do not apply to cost recovery actions against private parties.

Following this reasoning, it is also unnecessary for the government to have given defendants notice and the opportunity to respond before the government takes the responsibility upon itself. *See* CERCLA § 104. This Court has previously held that CERCLA § 107 is independent of the procedural provisions of CERCLA §§ 111 and 112. *Dickerson*, 640 F.Supp. at 452. (Cited in *Dedham Water* as one of a group of "better reasoned" cases which "provide[d] the proper interpretation of CERCLA." 805 F.2d at 1077.) Similarly, CERCLA § 107 is not subject to the procedural requirements of 42 U.S.C. § 9604. *Id.* at 452–3.

> "There is nothing in the plain language of the statute imposing a mandatory duty on the government to consult with private parties before undertaking response actions. In fact, the plain language of the statute contemplates emergency situations where the kind of notice and consultation advocated by defendants will be impossible. The courts should hesitate before reading procedural roadblocks into the statute when the health of the environment may be at stake. Statutes which are enacted for the protection and preservation of public health are to be given an extremely liberal construction for the accomplishment and maximization of their beneficent objectives."

*Id.* at 453 (citation omitted). *See also* 42 U.S.C. 9613(k)(2)(D), subtitled "Administrative record and participation procedures":

> "The President shall make reasonable efforts to identify and notify potentially responsible parties as early as possible before selection of a response action. *Nothing in this paragraph shall be construed as a defense to liability.*"

(emphasis added).

 Defendants argue that these defenses "are closely related to and clarify" the affirmative defense of inconsistency with the NCP. Fairchild Opp. at 17. As stated above, "close to" is not close enough. Defendants may try to prove that the government's response costs are incon-

11. Cumberland #s 11, 9 and 7; Fairchild #s 11, 9, 6 and 10; Kelly–Springfield #s· 14 and 18.

sistent with the NCP, but this will involve an analysis of the NCP and its provisions and defendants cannot refer to other sections of CERCLA as a substitute. Accordingly, the Court will strike these defenses.[12]

## F. FAILURE TO SUE EVERY POTENTIALLY RESPONSIBLE PARTY [13]

■ The United States need not sue every potentially responsible party in order to bring a cost recovery action. *Dickerson*, 640 F.Supp. at 450. Defendants can protect themselves through the impleader provision of Rule 14, *id.*, or through a separate action for contribution. *Monsanto*, 858 F.2d at 173.

## G. VARIOUS EQUITABLE DEFENSES [14]

Defendants have asserted a number of equitable defenses as precluding the remedy sought: laches, unclean hands, waiver and estoppel. The U.S. has moved to strike these defenses as incompatible with the liability provisions of CERCLA § 107.

Section 107(a) provides that CERCLA liability is "subject only to the defenses set forth in subsection (b) of this section." The subsection (b) defenses are act of God, act of war, and act of third parties (in limited circumstances, *see* above part D). The U.S. argues that under the plain language of the statute, these three defenses are the only ones allowable in a CERCLA cost recovery action. Particularly, the U.S. argues that the equitable defenses asserted are not allowed in a § 107 action by the government.

This Court is of the opinion that the government's exclusivity argument may be too narrow. A strict reading of the statute would bar fundamental defenses such as res judicata.[15] *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1056 n. 9. (D.C.Ariz.1984). However, the Court is also of the opinion that to generally allow equitable defenses such as those advanced here would seriously undermine the strict liability scheme embodied in CERCLA.

Many courts have held that the defenses laid out in § 107(b) are exclusive and, specifically, that equitable defenses may not be asserted. *See e.g. U.S. v. Western Processing Co., Inc.*, 734 F.Supp. 930 (W.D. Wash.1990). In *Western Processing*, the district court referred to the statements of

---

**12.** Kelly–Springfield argues that 42 U.S.C. § 9613(j) provides an independent basis for challenging the propriety of the government's response and seeks to hold in its defenses on this ground. CERCLA § 113(j) (added by SARA in 1986) refers to judicial review "in any judicial action under this chapter." This includes § 107 cost recovery actions. Section 113(h) provides that in an action under § 107, the federal court shall have jurisdiction to review challenges to removal and remedial actions. Section 113(j)(2) provides that in considering objections to the government's choice of response action,

"the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, the decision was arbitrary and capricious or otherwise not in accordance with law."

If the court finds that the government's decision was arbitrary and capricious, the remedy is to "award (A) only the response costs or damages that are not inconsistent with the National Contingency Plan and (B) such other relief as is consistent with the National Contingency Plan." § 113(j)(3). Thus, § 113 adds nothing to the defense of inconsistency with the NCP as the

same inquiry is the end result. Accordingly, § 113 cannot serve as an independent basis on which to assert lack of notice or opportunity.

**13.** Cumberland # 17; Fairchild # 18; Kelly–Springfield # 3.

**14.** Cumberland #s 5, 6 and 8; Fairchild #s 4, 7 and 8; Kelly–Springfield #s 4, 5, 6 and 7.

**15.** Although it could be argued that this is not a defense to liability so much as a bar to the suit.

Defendant Cumberland suggests that the government's argument could lead to unconstitutional results in certain circumstances and describes a cost recovery suit against a State defendant who might wish to raise the defense of Eleventh Amendment immunity. Fortunately this Court need not deal with that issue as it has already been resolved by the Supreme Court. In *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the Court held that in CERCLA, Congress had abrogated the Eleventh Amendment immunity of the States so that States could be held liable for monetary damages. 491 U.S. at 23, 109 S.Ct. at 2285–86.

Representative Eckhart, a primary sponsor of SARA in 1986:

> "The listed defenses are the only defenses which are available to avoid liability under section 107(a). There should be no other defenses, including equitable defenses, that defeat liability under sections 106 and 107 of the act."

734 F.Supp. at 939 (quoting 131 Cong.Rec. H11074 (daily ed. Dec. 5, 1985)). Even the court in *Mardan, supra,* stated that the unclean hands doctrine would not present a bar to recovery in an action brought by the government. 600 F.Supp. at 1058.

> "In summary, the better reasoned decisions and the majority of cases have held that the limited defenses of Section 107(b) are exclusive and that equitable defenses such as unclean hands cannot be asserted because of the clear statutory language and because they would thwart the public interest."

734 F.Supp. at 939.

And yet, a number of cases, including one from this district, have held that equitable defenses should be retained. The court in *Dickerson* refused to "adopt a flat rule" that estoppel could not run against the government, 640 F.Supp. at 451, although Judge Young did acknowledge that "estoppel is available against the United States in very limited circumstances, if at all." *Id.* In *U.S. v. Hardage,* 116 F.R.D. 460, 465 (W.D.Okl.1987), the district court refused to strike various equitable defenses out of concern for its own equitable jurisdiction. The court followed the Supreme Court's reasoning in *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), construing the Clean Water Act. The Supreme Court had stated that

> "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."

456 U.S. at 313, 102 S.Ct. at 1803. Thus, the district court ruled that

> "Even if this Court should accept as settled that the standard of liability under CERCLA is strict liability, legal or equitable defenses are not precluded when utilized for other purposes, in connection with the enforcement or interpretation of the statute. A provision for strict liability in a statute does not mean legal or equitable defenses cannot be asserted for other purposes, in connection with the enforcement or interpretation of the statute."

116 F.R.D. at 465.

This Court understands that CERCLA has not divested courts of their traditional equitable jurisdiction to fashion a remedy or secure compliance with the act. The United States does not appear to disagree with this; however, the United States argues that under CERCLA the court's equitable jurisdiction is not broad enough to permit challenges to § 107 liability.

 This Court is not convinced that equitable defenses may be asserted as defenses to liability under § 107(a) and perhaps in the final analysis will find defendants' equitable defenses unavailing either under the facts or the law. At present, however, the Court will retain the defenses of unclean hands, waiver, and estoppel subject to further development of the record. It would be inappropriate at this early stage to strike these defenses. The Court is reluctant to in any way limit its ability to deal effectively with the problem at hand by eliminating or circumscribing its equitable jurisdiction. Moreover, the Court is mindful of the Fourth Circuit's opinion in *Monsanto* that the preferable course of action is for the district court to "retain[ ] the action to dispose of the contribution questions," 858 F.2d at 173, and equitable factors are relevant in determining the proper allocation of damages in a contribution action. *Id.*

 The Court will strike the equitable defense of laches [16] as this is not appropriately asserted against a sovereign. *Dickerson,* 640 F.Supp. at 451.

---

**16.** Cumberland # 5; Kelly–Springfield # 4.

## H. STATUTE OF LIMITATIONS [17]

As CERCLA was originally enacted, it was not clear whether § 107 actions were subject to a statute of limitations. The district court in *Dickerson* held that no period of limitations applied. 640 F.Supp. at 450-1. A specific § 107 statute of limitations was added in 42 U.S.C. § 9613(g) effective October 17, 1986. The second of these two actions was filed on October 12, 1989. As the shortest limitations time applicable to this § 107 action is three years, and both of these suits were filed within three years of the statute's effective date, defendants' limitations defense fails as a matter of law. *See T & E Industries v. Safety Light Corp.*, 680 F.Supp. 696, 704 (D.N.J.1988) (limitations period begins to run with respect to pre-existing response cost claims on effective date of statute imposing limitations); *Sohn v. Waterson*, 84 U.S. (17 Wall.) 596, 599, 21 L.Ed. 737 (1873) (if newly enacted statute of limitations is applied retrospectively to actions which accrued prior to enactment, limitations is calculated from effective date of new statute).

## I. LACK OF CAUSATION [18]

Defendant Fairchild asserts that *if* it shipped hazardous substances to the site, they were not the cause of any release or threatened release nor did they cause the incurrence of costs by the government. Similarly, defendant Kelly–Springfield asserts that none of its hazardous materials were the cause of the government's response.

The government need not trace each defendant's waste to a specific release and response. The causation requirement of CERCLA is satisfied by proof that hazardous substances "like" those contained in the defendant's waste were found at the site. *Monsanto*, 858 F.2d at 169.

"Absent proof that a generator defendant's specific waste remained at a facility at the time of release, a showing of chemical similarity between hazardous substances is sufficient.

"CERCLA plaintiffs need not perform exhaustive chemical analysis of hazardous substances found at the disposal site. They must, however, present evidence that a generator defendant's waste was shipped to a site and that hazardous substances similar to those contained in the defendant's waste remained present at the time of release."

*Id.* and n. 15. To the extent defendants would require that the U.S. specifically tie each chemical to a particular cost, the defenses will be struck. Defendants may, of course, assert that they did not dispose of any waste at the Limestone Road Site.

## J. PLAINTIFF IS NOT ENTITLED TO THE RELIEF IT SEEKS [19]

Defendants assert that the U.S. is not entitled to judgment regarding future costs as these costs are presently remote, speculative and contingent; further, defendants assert that costs which have been incurred are not cost effective and that the U.S. has failed to properly document and allocate costs.

CERCLA § 113(g)(2) specifically provides that

"the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

Thus, the speculative nature of those future costs is no bar to a present declaration of liability. Of course, this declaration would refer only to liability and there is no apparent reason why the defendants could not challenge the actual costs incurred as inconsistent with the NCP.

CERCLA provides that the United States may recover "all costs of removal or remedial action [ ... ] not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). A defendant may challenge costs as being inconsistent with the NCP, but, as stated above, parts B and E,

---

**17.** Cumberland # 14; Fairchild # 15; Kelly–Springfield # 2.

**18.** Fairchild #s 23, 25; Kelly–Springfield # 17.

**19.** Cumberland #s 3, 13 and 23; Fairchild #s 13, 14, 26 and 28; Precise Metals # 4.

the NCP is the only basis by which the Court has to judge the propriety of the costs. Thus, defendants' independently outlined defenses of cost-effectiveness, etc. will be struck.

■ In its 26th defense, defendant Fairchild asserts that the United States has improperly allocated the costs of other sites to the Limestone Road Site. If so, this would go beyond the bounds even of the liberal nexus between the defendants and the response which was set forth in *Monsanto.* Accordingly, the Court will not strike this defense at this time.

## V. CONCLUSION AND ORDER

For the reasons discussed in the foregoing Memorandum, it is this 2nd day of May, 1991, by the United States District Court for the District of Maryland,

ORDERED:

1. That affirmative defenses numbers 1, 2, 3, 5, 6, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25 and 28 of defendant Fairchild are hereby struck;

2. That affirmative defenses numbers 1, 3, 4, 5, 7, 9, 11, 13, 14, 15, 16, 17, 18, 19 and 23 of defendant Cumberland are hereby struck;

3. That affirmative defenses numbers 1, 2, 3, 4, 8, 9, 11, 12, 13, 14, 15, 16, 17 and 18 of defendant Kelly–Springfield are hereby struck;

4. That affirmative defenses numbers 1, 2, 3, 4 and 5 of defendant Precise Metals are hereby struck.