MEMPHIS ZANE MAY ASSOCIATES, a Texas Limited Partnership, and Zane May Operating Partners, a Delaware Limited Partnership, Plaintiffs,

v.

IBC MANUFACTURING COMPANY, a/k/a Chapman Chemical Company, Inc., a Delaware Corporation; Ryder Truck Rental, Inc., a Florida Corporation; Memphis Drum Service, Inc., a Tennessee Corporation; and Davidson Equipment, Inc., a Tennessee Corporation, Defendants.

No. 94–2132–D.

United States District Court,
W. D. Tennessee,
Western Division.

Sept. 30, 1996.

Saul C. Belz, Waring Cox, Memphis, TN, Richard W. Bale, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for Memphis Zane May Associates and Zane May Operating Partners.

Allen T. Malone, Apperson Crump Duzane & Maxwell, Memphis, TN, for IBC Manufacturing Company.

John M. Barkett, Coll Davidson Carter Smith Salter & Barkett, Miami, FL, for Ryder Truck Rental, Inc., Ryder Systems, Incorporated.

G. Coble Caperton, Farris Mathews Gilman Branan & Hellen, Memphis, TN, for Memphis Drum Service, Inc.

Thomas W. Hardin, Hardin Parkes & Taylor, Columbia, TN, for Davidson Equipment.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF JOINT AND SEVERAL LIABILITY

DONALD, District Judge.

Currently before the court are Defendants' Rule 56(b) motions for partial summary judgment on the issue of joint and several liability. Plaintiffs Memphis Zane May Associates and Zane May Operating Partners ("Zane May") seek compensation for damages allegedly sustained to five of Plaintiffs' properties and bring their claim under four state common law theories and the 1980 Comprehensive Environmental Response, Compensation and Liability Act (CERCLA); 42 U.S.C. §§ 9601 *et seq.* (1994). Defendants Ryder Truck Rentals, Inc., Memphis Drum Service, Inc. and Davidson Equipment, Inc. ("the Ryder Defendants") have filed a motion and supporting memorandum opposing joint and several liability. Defendant IBC Manufacturing Co. ("IBC") has filed an identical motion and a separate memorandum. Having reviewed the parties' filings and considered the relevant caselaw, the court grants in part and denies in part Defendants' motions.

### I. BACKGROUND

Zane May brought this suit in February 1994 seeking damages for environmental harm, diminution in property value and "lost sale" profits due to soil and groundwater contamination at five properties in Memphis, Tennessee allegedly caused by releases of hazardous materials from Defendants' properties.

The action seeks to recover "response costs" under CERCLA and damages under four tort theories: private nuisance, strict liability, negligence and trespass. Count 1 seeks to hold Ryder, Memphis Drum, Davidson and IBC jointly and severally liable under the federal Superfund law for past and

future response costs for contamination to all its properties. Pls.' Compl. ¶¶ 20–23, 33. Counts 2–5 seek under the tort claims to impose joint and several liability on Defendants for interfering with Plaintiffs' use and diminishing the market value of their properties.[1] *Id.* ¶¶ 36, 39, 40, 50, 51, 56, 57.

Defendant IBC a/k/a Chapman Chemical Co. owns a pentachlorophenol (PCP) manufacturing plant that is located next to the Baker Building, across a railroad track. The Chapman site is on the Environmental Protection Agency's (EPA) inventory of potential Superfund sites. Ryder Trucks owns a strip of properties adjacent to Tranquility Park, which is south of the Baker Building, across Brooks Road. Ryder operates a truck maintenance facility there and leases another property on the strip to Memphis Drum, which recycles 55–gallon industrial waste drums using a high-temperature incineration process. Davidson Equipment is a previous tenant. Ryder is also the owner of the Tulane Road Landfill, a state Superfund site, located south of its strip of properties.

In 1991, Plaintiffs' environmental consultants, A.T. Kearney, Inc., detected contaminants in soil and groundwater at several testing sites along the western property boundary of the Baker Building (closest to the Chapman Chemical plant) and along Tranquility Park's eastern property line (closest to the strip of properties owned and leased by the Ryder Defendants). The groundwater monitoring well installed at the Baker Building closest to Brooks Road was approximately 600 feet from the nearest well at Tranquility Park across the road. Several hazardous substances, including PCP and trichloroethylene (TCE), registered above cleanup levels set by EPA.

Specifically, testing at the Baker Building revealed high levels of PCP and moderate levels of dichloromethane, a chemical belong-

ing to the same class of chemicals as TCE. A.T. Kearney, Inc., Environmental Property Assessment Phase II Report: Memphis Business Parks ("Phase II Report"), at 24 (October 1991). In addition, the results showed concentrations of bis (2–ethylhexyl) phthalate above EPA's maximum contaminant level (MCL).[2] *Id.* at 25. TCE was not detected at the Baker site. The report states that Chapman Chemical is the "probable primary source of all of these chemicals." *Id.*

At Tranquility Park, samples drawn from one of three wells (located close to Memphis Drum) revealed TCE concentrations higher than EPA's maximum level. Bis (2–ethylhexyl) phthalate was detected in both groundwater and sediment samples at levels exceeding another EPA benchmark, the proposed Corrective Action Rule. *Id.* at 26. Groundwater samples also contained moderate arsenic contamination (two to three times the MCL). PCP contamination was not detected at Tranquility Park.

The Kearney report states that a 1989 test of surface water and sediment from a drainage ditch separating the Tulane Road site from the eastern boundary of Tranquility Park revealed high arsenic levels. In addition, arsenic is an ingredient in at least one common class of pesticides produced by Chapman Chemical and is often found in ash produced by Memphis Drum's incineration process. The report lists the Tulane Road Landfill as the likely source of most or all of the hazardous waste detected at Tranquility Park. *Id.* at 26–27. Finally, a follow-up report revealed petroleum hydrocarbons at levels exceeding the recommended cleanup standard established by the Tennessee Department of Health and the Environment. Professional Serv. Indus., Tranquility Park Groundwater & Soil Investigation ("PSI Report"), at 4 (April 15, 1994). The report lists

---

1. Plaintiffs seek to recover profits they claim would have been made on a package sale of all five properties—Bellbrook Business Park, the Air Trans Building, Space Center, Tranquility Park and the Baker Building—to the Florida System Board of Adjustment, which manages the pension trust fund for state employees and retirees. Pls.' Compl. ¶¶ 39, 44, 50, 56. This court last year granted Defendants' motion for summary judgment denying Plaintiffs such "lost sale"

damages. Plaintiffs have filed a Rule 59(e) motion requesting the court reconsider that order, which the court denies in a separate order.

2. MCL is set by the Environmental Protection Agency to safeguard drinking water. The agency often bases cleanup standards for groundwater in Superfund remedial actions on MCL values.

Davidson Equipment as the likely source. *Id.*

Of the three remaining Zane May Properties, only the Space Center was cited by the Plaintiffs' consultants as having contamination above the MCL. *Id.* at 23. The Space Center is located west of Tranquility Park, across the railroad tracks. The report mentions another business, not a defendant in this litigation, as a potential source of the hazardous substance, 1,1 dichloroethene. *Id.* at 24.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court also may consider any material that would be admissible or usable at trial, including exhibits that have been properly made a part of an affidavit. 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2721, at 40, § 2722, at 56 (2d ed. 1983).

In ruling on a motion for summary judgment, the evidence and inferences based on facts must be viewed in a light most favorable to the nonmoving party, in this case the Plaintiffs. *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). As the moving parties, Defendants bear the initial burden of proving that no material facts exist. *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). If Defendants meet that burden, the Plaintiffs then must set forth specific facts showing there is a genuine issue for trial, which exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Notably, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

## III. CERCLA

CERCLA states that "the owner and operator of a ... facility ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable...." 42 U.S.C. § 9607(a). The statute provides for a private cause of action and requires the plaintiff to prove four elements:

1. The defendant must fall within one of four categories of covered persons. 42 U.S.C. § 9607(a).
2. There must have been a "release or threatened release" of a hazardous substance from defendant's facility. 42 U.S.C. § 9607(a)(4); § 9601(14), (22).
3. The release or threatened release must cause the plaintiff to incur response costs. 42 U.S.C. § 9607(a)(4).
4. The plaintiff's costs must be "necessary costs of response ... consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B); § 9601(23)–(25).

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.* ("Dedham I"), 889 F.2d 1146, 1150 (1st Cir.1989).

At all times relevant to this case Defendants were owners or operators of "facilities" within the statutory language. *See* 42 U.S.C. § 9601(9).

Defendant IBC argues there is a required "nexus" that Plaintiffs must show between their payment of response costs and a release from IBC properties. IBC claims Plaintiffs can do this only with respect to the Baker Building, not the other four properties. Def. IBC's Mem. Supp. Partial Summ.J. at 9. The other Defendants make similar arguments. Ryder Defs.' Mem.Supp. Partial Summ.J. at 1–2 ("[E]ach Defendant is alleged to have conducted activities adjacent to only one of Plaintiffs' properties.").

In response, Plaintiffs claim that CERCLA requires Defendants to prove their way out of joint and several liability by showing that harm caused by each defendant is distinct, or that a reasonable basis for allocating responsibility is available. Pls.' Mem. in Opp'n to

IBC's Mot. for Partial Summ.J. at 2 (citing *United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir.1993)).

In *Alcan,* the appellate court held that, to defeat the U.S. government's summary judgment motion seeking joint and several liability, the defendant "needed only show that there were genuine issues of material fact regarding a reasonable basis for apportionment of liability." *Alcan,* 990 F.2d at 722. Consistent with CERCLA's legislative history and subsequent caselaw, the Second Circuit drew from the Restatement: "where two or more joint tortfeasors act independently and cause a distinct or single harm, for which there is a reasonable basis for division according to the contribution of each, then each is liable for damages only for its own portion of the harm." *Id.* (citing *Restatement (Second) of Torts* § 433A (1977)).

■ However, neither *Alcan* nor any other case cited by Plaintiffs refutes Defendants' argument regarding causation. To the contrary, Plaintiffs must show a nexus between their response costs and a release from a Defendant's property as a necessary predicate to a finding of joint and several liability. Although CERCLA does not require a plaintiff to prove that a *specific* defendant's waste caused it to incur clean-up costs, the statute does require the party claiming an environmental injury to show that a release of hazardous or toxic materials "caused incurrence of response costs." 42 U.S.C. § 9607(a)(4); *Alcan,* 990 F.2d at 721.

A. Causation

■ Traditional tort notions of causation do not apply in CERCLA, which utilizes a "status-based" liability standard. Peter M. Manus, *Natural Resource Damages from Rachel Carson's Perspective: A Rite of Spring in American Environmentalism,* 37 Wm. & Mary L.Rev. 381, 417 (1996). However, causation plays a role within those status categories. As an initial matter, plaintiffs must demonstrate a relationship between a defendant and the release or threatened release of a hazardous substance. For defendants sued as "owners"

or "operators" under CERCLA, a plaintiff must show only that the defendant currently owns or operates the site. *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1507 (6th Cir.1989). A current owner or operator thus is liable even if it had no relationship to the site when the hazardous wastes at issue were disposed. *Id.;* John C. Nagle, *CERCLA, Causation and Responsibility,* 78 Minn.L.Rev. 1493, 1511 (1994).

■ The Second Circuit was referring to *this* requirement—that a plaintiff show the link between defendant and the release— when it wrote that CERCLA "unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation." *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985). Plaintiffs in Zane May may have misconstrued this statement as holding that CERCLA imposes no causation standard whatsoever.[3] To the contrary, liability under the Superfund law requires the plaintiff to have expended money to counter the effects of a release (or the threatened release) of hazardous substances from a defendant's facility. *Dedham I,* 889 F.2d at 1152; *see also* Nagle, *supra,* at 1515 n. 97 (listing cases). The First Circuit captured this subtle distinction when it wrote that CERCLA imposes liability "on classes of persons, i.e. owners, former owners, generators, or transporters . . . without reference to whether they caused or contributed to the release or threat of release. *The release or threat of release only need have emanated from the facility which they owned, or to which they transported.*" *Dedham I,* 889 F.2d at 1153 (emphasis added).

■ In their complaint, Plaintiffs allege harm to five parcels of land—Bellbrook Business Park, Space Center Industrial Park, the Air Trans Building, Tranquility Park and the Baker Building—and seek to recover past and anticipated expenditures for detecting, investigating and remediating soil and groundwater contamination (response costs) on those parcels. Pls.' Compl. at 5–6. To survive Defendants' motion for summary

---

**3.** This is unclear. Plaintiffs dismiss Defendants' causation argument with a single sentence. Pls.'

Mem. in Opp'n to IBC's Mot. for Partial Summ.J. at 3.

judgment on the issue of joint and several liability, Plaintiffs must present *some* evidence that the chemicals detected on Zane May properties issued from a Defendant's property. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (holding that the nonmoving party may not oppose summary judgment by relying solely on its pleadings). CERCLA does not require a plaintiff to trace the ownership of a particular chemical compound found at the clean-up site; the causation requirement is satisfied by proof that hazardous substances like those contained in a defendant's release of wastes were found at the site. *Alcan,* 990 F.2d at 721; *United States v. Monsanto Co.,* 858 F.2d 160, 169 (4th Cir. 1988).

■ An examination of all filings with this court reveal no evidence that:

1. any substance(s) from IBC (Chapman Chemicals), Ryder Truck Rental (Tulane Road Landfill), Memphis Drum Service or Davidson Equipment leaked, leached, poured or otherwise migrated or contaminated the soil or groundwater for which Zane May Associates or Zane May Operating Partners had to incur or may have to incur response costs at the Business Park, Space Center or the Air Trans Building.
2. any threat of release of substance(s) from IBC (Chapman Chemicals), Ryder Truck Rental (Tulane Road Landfill), Memphis Drum Service or Davidson Equipment has caused or may cause Zane May Associates or Zane May Operating Partners to incur response costs at the Business Park, Space Center or the Air Trans Building.

■ No reasonable jury could find a nexus between any Defendant and the Bellbrook, Space Center or Air Trans properties, thus no Defendant may be found liable for contamination detected at those three sites as a matter of law.[4] As the Fifth Circuit ex-

plained, joint and several liability "applies only to a 'proved wrongdoer who has in fact caused harm to the plaintiff.'" *In re Bell Petroleum Serv., Inc.,* 3 F.3d 889, 896 (5th Cir.1993) (quoting *Restatement (Second) of Torts* § 433B(2) cmt. d).

■ However, there is a genuine issue of material fact whether a release of pollutants at IBC (Chapman Chemicals), Memphis Drum, Ryder Trucks (Tulane Road Landfill) or Davidson Equipment caused Plaintiffs to incur response costs at the Baker Building or at Tranquility Park.

**B. Contiguity of Properties**

■ The court is aware of no CERCLA rulings that have held multiple defendants jointly and severally liable for non-contiguous tracts of land simply because they were owned by the same person or entity or were part of a packaged land deal. *See Akzo Coatings, Inc. v. Aigner Corp.,* 881 F.Supp. 1202, 1211 (N.D.Ind.1994) (granting defendants' motion for summary judgment on the issue of joint and several liability because the contaminated sites were non-contiguous). In *United States v. Fairchild Industries, Inc.,* 766 F.Supp. 405 (D.Md.1991), the district court said an attempt to lump noncontiguous properties together for the purpose of awarding of response costs "would go beyond the bounds even of the liberal nexus between the defendants and the response which was set forth in *Monsanto.*" *Id.* at 416.

However, the Baker Building and Tranquility Park are effectively contiguous given their geographical proximity and the flow of groundwater, PSI Report, at 3, to be considered as a single piece of property for the second stage of analysis for joint and several liability, the divisibility of harms.

**C. Divisibility of Harms**

Courts have interpreted CERCLA to impose joint and several liability when the envi-

4. Plaintiffs will not be surprised by this conclusion. Their memorandum opposing summary judgment states: "Hazardous substances were found above cleanup levels at Tranquility Park and Baker Building—that's where the contamination exists for which the Defendants are responsible under CERCLA, not at Air Trans, Space Center or Bellbrook Park." Pls.' Mem. in

Opp'n to Ryder Defs.' Mot. for Summ.J. at 8 n. 1. Having failed to show a causal link—the "minimal causal nexus" required under CERCLA, *U.S. v. Distler,* 803 F.Supp. 46, 50 (W.D.Ky.1992)— Plaintiffs should consider the latter three properties retired from this litigation with respect to the Superfund claims.

ronmental harm is "indivisible" and to permit apportionment of damages between or among multiple defendants in a Superfund action only when two or more polluters are independently responsible for a divisible harm. *Meyer*, 889 F.2d at 1507 (citing *Monsanto*, 858 F.2d at 171). In *Monsanto*, the Fourth Circuit held that the Restatement's approach represented the "correct and uniform" rules applicable to CERCLA actions. Section 433A of the Restatement provides:

(1) Damages for harm are to be apportioned among two or more causes where

    (a) there are distinct harms, or

    (b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

*Restatement (Second) of Torts* § 433A (1977).

██ Defendants bear the burden of establishing a reasonable basis for apportioning liability or that the harms are distinct. *Alcan*, 990 F.2d at 722. By design, this task is difficult. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 269 (3d Cir.1992) (*Alcan–Butler*). CERCLA's joint and several liability rule is tough on defendants because "Congress had well in mind that persons who dump or store hazardous waste sometimes cannot be located or may be deceased or judgment-proof." *Shore Realty*, 759 F.2d at 1045. However, the defendant can avoid joint and several liability by showing the harm is capable of being divided among its various causes, for example by presenting evidence of the relative toxicity, migratory potential, degree of migration or "synergistic capacities" of the hazardous substances at issue. *Alcan*, 990 F.2d at 722; *United States v. Broderick Inv. Co.*, 862 F.Supp. 272, 276 (D.Colo.1994). This includes a showing that hazardous substances occupy "separate and distinct geographic areas of contamination." *Broderick*, 862 F.Supp. at 277. In addition, where there is not substantial commingling of wastes, the

First Circuit suggested that harms may be divisible if defendants' substances contaminated different media, for example surface soil but not groundwater. *O'Neil v. Picillo*, 883 F.2d 176, 183 n. 11 (1st Cir.1989); *see also Restatement (Second) of Torts* § 433B(2) cmt. d (noting the rationale for placing on the defendant the burden to show apportionment is to prevent a wrongdoer from escaping liability "merely because the harm which he has inflicted has *combined with similar harm* inflicted by other wrongdoers") (emphasis added).

██ In *Broderick*, the court said joint and several liability was not appropriate in a case of PCP groundwater contamination caused by two separate "plumes" detected at a Superfund site. *Id.* In the current litigation, Defendants' evidence regarding the divisibility of harms hinges on distinct pollutants that are geographically separated. The principal contaminants at the Baker Building and Tranquility Park are different compounds— PCP and TCE, respectively—and there is no evidence of commingling of these substances. Phase II Report, at 24–26. Furthermore, the only evidence of TCE contamination came from testing wells adjacent to Memphis Drum, while the only location of petroleum hydrocarbon pollution of soil was an isolated spot near Davidson Equipment.

On the other hand, Plaintiffs' environmental consultants detected bis (2–ethylhexyl) phthalate at levels higher than EPA–set limits at *both* sites, and dichloromethane, a chemical belonging to the same class of chemicals as TCE,[5] was detected at the Baker Building at a level more than twice the MCL. *Id.*

Even construing the evidence in the light most favorable to the Plaintiffs and keeping in mind the rigorous burden Defendants bear, the court finds that a "reasonable estimate" that will "fairly apportion liability" among the Defendants exists as to the PCP and petroleum hydrocarbon contamination al-

---

5. TCE and dichloromethane are "chlorinated solvents," chemicals used primarily as industrial cleaning agents. Chlorinated solvents are heavier than water, which allows them to move rapidly down through unsaturated ground and disperse over wide areas once they encounter the water table.

leged by Plaintiffs. *See In re Bell,* 3 F.3d at 900.

## IV. STATE LAW CLAIMS

### A. Joint and Several Liability

■ The Tennessee Supreme Court abolished the doctrine of joint and several liability in a 1992 ruling that abandoned the contributory negligence rule in favor of a modified version of comparative fault knows as the "49 percent rule." *McIntyre v. Balentine,* 833 S.W.2d 52, 57 (Tenn.1992). The court stated that, "[h]aving thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault." *Id.* at 58. The ruling applies to all cases decided after May 4, 1992, the date of the opinion.

The Tennessee high court has not "back tracked" on their decision, as Plaintiffs suggest, and in fact has affirmed the *McIntyre* holding with respect to abolishing joint and several liability in subsequent cases. Plaintiffs seek shelter in *Bervoets v. Harde Ralls Pontiac–Olds, Inc.,* 891 S.W.2d 905 (Tenn. 1994), in which the state supreme court clarified that *McIntyre* did not abolish the remedy of contribution. *Id.* at 907. However, *Bervoets* merely reconciled the comparative fault principle with Tennessee's version of the Uniform Contribution Among Tortfeasors Act; the ruling did not reestablish joint and several liability. *Id.* at 907–08. Indeed, the court clearly stated that *McIntyre* abolished joint and several liability "to the extent that it allows a plaintiff to sue and obtain a full recovery against any one or more of several parties against whom liability could be established...." *Id.* at 907. Finally, the Tennessee Supreme Court has reaffirmed *McIntyre* in subsequent rulings. *See, e.g., Volz v. Ledes,* 895 S.W.2d 677, 680 (Tenn. 1995) ("We again confirm that the doctrine of joint and several liability was rendered obso-

lete by our decision in *McIntyre v. Balentine.*").

### B. Defendants' Individual Liability

■ Defendant IBC argues that, because *McIntyre* precludes a finding of joint and several liability under state tort theories, it cannot be found liable for contamination detected beneath any of Plaintiffs' properties other than the Baker Building. Def. IBC's Mem. at 8. The Ryder Defendants likewise argue they have no liability except possibly for damage to Tranquility Park. Ryder Defs.' Mem. at 8. Furthermore, the Ryder Defendants seek a declaration that Davidson cannot be held liable for damages related to the TCE pollution detected on Tranquility Park because the former site of the company was "several hundred feet south" of the monitoring well in which TCE was detected at above–MCL levels. *Id.* Similarly, they argue that Memphis Drum cannot be found liable for any petroleum hydrocarbon contamination found next to the former Davidson leasehold. *Id.* at 9.

■ As to Bellbrook Business Park, Air Trans and the Space Center, Defendants have the right answer but the wrong theory. They cannot be found liable for contamination at these three properties, not because Tennessee has abolished joint and several liability, but because Plaintiffs failed to demonstrate even a minimal causal nexus. However, Defendants have *not* met their burden under Rule 56(c) to show there are no genuine issues of material fact concerning the parties responsible for contamination at the Baker Building and Tranquility Park. Thus, while Defendants may not be held jointly and severally liable for damages at those two sites, Plaintiffs still may pursue their state tort claims and attempt to prove their harm was proximately caused by a particular Defendant's action or inaction.[6]

## V. ORDER

For the reasons set forth in Part III of this Order, Defendants' motion for partial

---

**6.** Joint and several liability analysis hinges on capability of apportionment, not certainty as to cause. Thus, a court may find joint and several liability inappropriate for one polluter because

60 percent of the pollution is attributable to that defendant, even though the source of the remaining 40 percent is unknown. *See Restatement (Second) of Torts* § 433A(1)(a)–(b).

summary judgment concerning joint and several liability under CERCLA is **GRANTED** with respect to the Bellbrook Business Park, Air Trans Building and the Space Center, and with respect to the alleged pentachlorophenol (PCP) and petroleum hydrocarbon contamination at the Baker Building and Tranquility Park. As to all other contamination Plaintiffs allege in their CERCLA claim, Defendants' motion for partial summary judgment concerning joint and several liability is **DENIED.**

For the reasons set forth in Part IV of this Order, Defendants' motion for partial summary judgment with respect to joint and several liability for Plaintiffs' state tort claims is **GRANTED.**

**IT IS SO ORDERED.**